# EXHIBIT 1

1 **ORDR**

2

3

4

DISTRICT COURT

CLARK COUNTY, NEVADA

5

6

7 INNOVATIV MEDIA GROUP, INC., a
Wyoming corporation;

Case No.: A-22-849188-B
Dept. No.: XXXI

8

Plaintiff,

9

and

10

**FINDINGS OF FACT, CONCLUSIONS**
**OF LAW, and JUDGMENT**

11 JOSEPH CUNNINGHAM, an individual;

12 Plaintiff-in-Intervention,

13 vs.

14 FTE NETWORKS, INC., a Nevada
corporation; LATERAL U.S. CREDIT

15 OPPORTUNITIES FUND, LP; RICHARD
DE SILVA; FIRST CAPITAL REAL

16 ESTATE TRUST, INC.; APAVA, INC.;
RICHARD LEIDER, TRUSTEE OF THE

17 RICHARD & JANE LEIDER REVOCABLE
TRUST; DOES I-X; ROE Entities, I-X,

18

19 Defendants.

20

21

22 **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

23 The above-entitled matter came on for Non-Jury Trial before Department

24 XXXI of the Eighth Judicial District Court's Business Division, in and for Clark

25 County, Nevada, with the Honorable Joanna S. Kishner presiding, commencing

26 on January 6, 2025.

27

28

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

1

Exhibit 1
Page 1 of 93
Statistically closed: USJR - CV - Bench Trial - Judgment Reached (USJRBT)

Plaintiff INNOVATIV MEDIA GROUP, INC. ("Innovativ"), a Wyoming Corporation, appeared by and through their attorneys of record, Marquis Aurbach, Chtd.; Plaintiff-in-Intervention JOSEPH CUNNINGHAM ("Cunningham"), an individual, appeared by and through their attorneys of record, Beckstrom and Beckstrom; Defendants FTE NETWORKS, INC. ("FTE"), a Nevada Corporation, LATERAL U.S. CREDIT OPPORTUNITIES FUND, LP ("Lateral"), a Delaware Limited Partnership, and RICHARD DE SILVA ("DeSilva"), an individual (collectively, "FTE Defendants"), appeared by and through their attorneys of record Daniel S. Cereghino, Esq., and Brandi Segura, Esq.;[1] and Defendants APAVA INC. ("Apava"), a Wyoming Corporation, and RICHARD LEIDER, TRUSTEE OF THE RICHARD & JANE LEIDER REVOCABLE TRUST ("Leider"), a resident of California (collectively, "Apava Defendants"), appeared by and through their attorneys of record, Gary R. Jones, (*pro hac vice*) and Daniel S. Cereghino, Esq. as local co-counsel.

The Court, having heard the testimony of witnesses and received other evidence, having heard the argument of counsel, having reviewed and considered such testimony of witnesses and other evidence and arguments of counsel, and good cause appearing, makes the following Findings of Fact and Conclusions of Law:

---

[1] As set forth in other pleadings in the case, Daniel S. Cereghino, Brandi Segura, and their client Michael Beys, the corporate representative of FTE, without the knowledge or consent of the Court or co-counsel, left mid-trial for no good cause and chose not to return or participate for the remainder of trial. Thus, while the Court provided all parties a full and fair opportunity to participate in the trial, due to counsel and the client's actions, they chose not to participate.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

2

Exhibit 1
Page 2 of 93

# I.     **BACKGROUND**

On June 22, 2023, Innovativ filed its "Supplemental Complaint" (Doc. 280) against FTE, Lateral, DeSilva, FIRST CAPITAL REAL ESTATE TRUST, INC. ("FC-RET"),[2] Apava, and Leider.  Innovativ's Supplemental Complaint (Doc. 280) alleges claims for: (1) violation of NRS 78.105, against FTE; (2) declaratory relief regarding the validity of bylaws amendment, against all Defendants; (3) declaratory relief regarding the validity of the second bylaws amendment, against all Defendants; (4) declaratory relief regarding the validity of the March 2023 amended and restated bylaws, against all Defendants; (5) declaratory relief regarding validity of stock issuance, against all FTE, FC-RET, Apava, and Leider; (6) declaratory relief regarding validity of stock cancellation, against FTE; (7) injunctive relief; and (8) appointment of a receiver.

On June 30, 2023, Cunningham filed his Complaint-in-Intervention (Doc. 298) against FTE, Later, DeSilva, FC-RET,[3] Apava, and Leider.  Cunningham's Complaint-in-Intervention alleges claims for: (1) declaratory relief regarding the validity of bylaws amendment, against all Defendants; (2) declaratory relief regarding the validity of the second bylaws amendment, against all Defendants; (3) declaratory relief regarding the validity of the March 2023 amended and restated bylaws, against all Defendants; (4) declaratory relief regarding validity of stock issuance, against all FTE, FC-RET, Apava, and Leider; (5) injunctive relief; and (6) appointment of a receiver.

---

[2] On September 13, 2024, FC-RET filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland, Case. No. BK-24-17705. *See* Notice of Bankruptcy (Doc. 351). Pursuant to 11 U.S.C. 362(a), this matter is stayed against FC-RET.
[3] *See supra* note 2.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

3

Exhibit 1
Page 3 of 93

## II. __FINDINGS OF FACT__

### A.     THE PARTIES

1.     Plaintiff Innovativ is a Wyoming Corporation.  Tom Coleman ("Coleman") is the CEO. Innovativ is a stockholder of FTE holding 500,000 shares of FTE common stock. **Ex. 28.023**.

2.     Plaintiff-in-Intervention, Cunningham, is a stockholder of FTE, holding 150,000 shares of FTE common stock. **Ex. 28.0013**.  Cunningham also became an independent director of FTE in October 2019. **Ex. 1.0006**.

3.     Defendant FTE is a Nevada Corporation. **Ex. 1.001**.  FTE was a publicly traded company that was delisted from the New York Stock Exchange ("NYSE") in or around December 2019. **Ex. 1.0011**.  Michael Beys ("Beys") became FTE's interim CEO in December 2019. **Ex. 1.0006**.  Beys became a director of FTE in October 2019. *Id.*

4.     Defendant DeSilva is a resident of California. DeSilva joined the board of directors of FTE in October 2019. **Ex. 1.0006**.  DeSilva is a stockholder of FTE holding 150,000 shares of FTE common stock. **Ex. 28.0013**.  DeSilva also controls entities that are stockholders and creditors of FTE. **Ex. 1.0044**. DeSilva did not attend or participate in the trial.

5.     Defendant Lateral is a Delaware Limited Partnership.  Lateral is controlled by DeSilva. **Ex. 28**.  Lateral is a stockholder of FTE, holding 8,624,661 shares of common stock and 2,000 shares of Series J Preferred Stock. **Ex. 28.0028**, **189**.  A party representative for Lateral did not attend or participate in the trial.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

4

Exhibit 1
Page 4 of 93

6.      Defendant Apava is a Wyoming Corporation.  Apava's sole officer, director, and shareholder is Frank Forelle ("Forelle").  Apava is a purported stockholder of FTE, and Forelle is the former CEO of FC-RET.

7.      Defendant Leider is a resident of California.  Leider is a purported stockholder of FTE and a director of FC-RET.  Neither Leider, nor a party representative for Leider, attended or participated in the trial.

8.      Non-parties Alexander and Antoni Szkaradek (collectively, "Szkaradeks") were initially Plaintiffs in this case.  However, on June 20, 2022, the Court dismissed the Szkaradeks, finding that Delaware Courts had exclusive jurisdiction over the Szkaradeks' claims. *See* Order Granting in Part FTE's Counter-Motion to Dismiss, Granting in Part Plaintiffs' Petition for a Writ of Mandate, and Granting Plaintiffs' Motion to Strike (Doc. 57) at ¶¶ 23-26.

## B.      THE SZKARADEKS' STOCK

9.      According to FTE's public disclosures, the Szkaradeks entered into a purchase agreement with FTE on or about December 20, 2019, which was subsequently amended on December 30, 2019, and amended once again on April 2, 2021 (collectively, the "Szkaradeks Transaction"). **Ex. 10**, **15**.

10.     As part of the Szkaradeks Transaction, FTE agreed to purchase 3,184 single family home rental properties ("Properties") that were owned and managed by the Szkaradeks. *Id.*  In relation to the Szkaradeks Transaction, FTE issued 22,063,376 shares of FTE common stock, and 200 shares of Series I Preferred Stock to the Szkaradeks. *Id.*; **Ex. 28**, **148**, **189**, **191**.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

5

Exhibit 1
Page 5 of 93

11.     On April 16, 2021, the Szkaradeks became record stockholders of these 22,063,376 shares of FTE common stock, as evidenced by the holdings statement produced by FTE's transfer agent, Nevada Agency and Transfer Company ("NATCO"), dated November 12, 2021, and the verified FTE stockholder list prepared by NATCO evidencing the stockholders of record as of February 3, 2022. **Ex. 28**, **147**, **148**.

12.     On April 30, 2021, the Szkaradeks became record stockholders of the 200 shares of Series I Preferred Stock, as evidenced by FTE's preferred stockholder list showing their 200 shares of Series I Preferred Stock. **Ex. 189**. Also on April 30, 2021, the Szkaradeks were issued signed certificates, further evidencing their Series I Preferred Stock. **Ex. 191**.

13.     On or about June 14, 2022, FTE brought an action against the Szkaradeks in the U.S. District for the State of Delaware (Case No. 1:22-CV-00785-WCB) ("Delaware Action") seeking, *inter alia*, judgment directing the Szkaradeks to transfer 11,031,688 shares of FTE common stock to FC-RET. **Ex. 136**.   FC-RET intervened in the Delaware Action alleging, *inter alia*, that the Szkaradeks never transferred the 11,031,688 FTE shares to FC-RET. **Ex. 170.001-002**.

14.     On March 3, 2023, the Delaware Court entered an Opinion and Order granting the Szkaradeks' Motion for Judgment on the Pleadings ("Delaware Order"), wherein the Delaware Court, *inter alia*, rejected the argument

Exhibit 1
Page 6 of 93

that FTE may deprive a stockholder of its rights under Nevada law based upon unproven allegations of fraud.[4] **Ex. 136**.

15.     As shown by the evidence presented at trial, the Szkaradeks did not consent to transfer or cancel their shares of FTE stock. **Ex. M**, **N**.

## C.     INNOVATIV'S STOCK

16.     On April 16, 2020, Innovativ acquired 500,000 shares of FTE stock from non-party TTP8, LLC ("TTP8"), evidenced by a Stock Power executed by Suneet Singal ("Singal") on behalf of TTP8, which was also guaranteed by a Medallion Signature. **Ex. 95.0142-154**.  Innovativ paid TTP8 $50,000.00 for the purchase of this stock, as evidenced by a Stock Transfer Agreement executed by Coleman, on behalf of Innovativ, and Singal, on behalf of TTP8. **Ex. 95.0237-249**.  The testimony at trial, proffered by Coleman, further corroborates the stock purchase ("TTP8 Transaction").

17.     On or about May 19, 2020, corporate counsel for FTE, Maria Fernandez ("Fernandez"), emailed Beys and recommended "approving the contemplated transfer" to Innovativ, to which Beys responded, "Approved." **Ex. 95**, **107**.  Similarly, emails surrounding the TTP8 Transaction show that FTE acknowledged Innovativ as a stockholder. **Ex. 104**.  Coleman testified at trial that, at the time, no one from FTE questioned the validity of the TTP8 Transaction, and Innovativ did not know of any potential claims against TTP8 regarding its ownership of the stock.

---

[4] This Court took judicial notice of the Delaware Order on May 3, 2023. *See* Order Granting Preliminary Injunction (Doc. 252) at ¶ 21.

**JOANNA S. KISHNER**
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

7

Exhibit 1
Page 7 of 93

18. On or about May 19, 2020, Innovativ became the record stockholder of the 500,000 shares of FTE common stock, as evidenced by FTE's verified stockholder list prepared by NATCO showing the stockholders of record as of February 3, 2022. **Ex. 27**, **28**.

19. On March 12, 2023, the board of directors of FTE held a meeting at which it purported to unilaterally cancel the stock issued to Innovativ. **Ex. 82**. Cunningham testified at trial that Beys and DeSilva did this unilaterally, without the consent of Cunningham. However, on or about September 10, 2024, FTE's Board of Directors, including Beys and DeSilva, ultimately ratified Innovativ's ownership of the shares. **Ex. 123**.

20. Based on the foregoing, the Court finds that Innovativ is, and has been through the course of these proceedings, a valid stockholder of FTE.

## D. INNOVATIV'S INSPECTION REQUESTS

21. Coleman testified at trial that, in 2021, Coleman grew increasingly concerned about FTE based upon its public filings, including that: FTE had become delinquent in its filings with the Securities and Exchange Commission ("SEC"); had failed to pay sums due the Szkaradeks and others in connection with the Szkaradek Transaction; had received default notices from their principal lenders; had terminated Manish Bansal, an executive hired to replace Beys and advance its real estate business; and had lost its independent director, Peter Ghishan, who had resigned abruptly.

22. Coleman testified at trial that he also grew concerned about the impartiality of DeSilva, given that his entity, Lateral, had previously foreclosed on

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

8

Exhibit 1
Page 8 of 93

FTE's principal asset, Benchmark Builders. **Ex. 1.0087**. In particular, Coleman believed DeSilva and Beys were attempting to implement a "poison pill" strategy for FTE, which Coleman explained comprised a corporate strategy to deter stockholder interference and minimize stockholder voting or control.

23.     Coleman testified at trial that he attempted to contact DeSilva and Beys, leaving multiple messages asking for each requesting to discuss FTE, to which neither DeSilva nor Beys responded. Consequently, Coleman engaged a New York law firm to help him obtain information from FTE.

24.     On December 21, 2021, Innovativ formally requested to inspect the FTE stockholder list via letter, delivered both physically and electronically, with an accompanying affidavit from Coleman, certifying that the demand was not done for any improper purpose. **Ex. 6**. Coleman testified at trial that this first formal request received no response.

25.     FTE's bylaws dated June 10, 2013, ("Original Bylaws"), which were in effect at the time of Innovativ's request, permitted a stockholder to inspect the FTE stockholder list. **Ex. 3**; *see also* **Ex. 1.067**. Coleman testified at trial that his attorneys corresponded on multiple occasions with Fernandez, corporate counsel for FTE, in or around December 2021 and January 2022, in an attempt to enforce Innovativ's right to inspect the FTE stock ledger, to which Fernandez refused.

26.     At trial, Coleman and Cunningham testified that in January 2022, DeSilva, Lateral, and Beys were contemplating an action to usurp control of FTE to the detriment of the stockholders. Cunningham also testified that DeSilva and

Exhibit 1
Page 9 of 93

Beys were the controlling directors of FTE and attempted to dictate the actions of FTE over his objections.

27.    On February 8, 2022, Innovativ sent another written request to Beys to inspect the stockholder list, with an accompanying affidavit from Coleman certifying that the demand was not done for any improper purpose. **Ex. 7**. Cunningham testified at trial that despite his objections, FTE's controlling directors, Beys and DeSilva, refused to provide Innovativ a stockholder list.

28.    On March 3, 2022, Innovativ filed its Complaint seeking, *inter alia*, an Order from this Court allowing Innovativ to inspect FTE's stockholder list as of February 3, 2022. *See* Complaint (Doc. 1) at ¶¶ 39-46.

29.    On May 12, 2022, Innovativ filed its Petition for Writ of Mandate compelling FTE to allow Innovativ to inspect FTE's stockholder list. *See* Petition for Writ of Mandate (Doc. 35). FTE opposed the Petition for Writ of Mandamus, arguing that Innovativ did not properly own any shares of FTE stock and that its demand was not for a proper purpose. *See* FTE's Opposition to Petition for Writ of Mandate (Doc. 42).

30.    On June 30, 2022, this Court granted Innovativ's Petition for Writ of Mandate, in part, with respect to Innovativ's request to inspect FTE's stockholder list. *See* Order (Doc. 57) at 9.

31.    On August 18, 2022, Innovativ received a copy of FTE's stockholder list with an incorrect cutoff date. **Ex. 8**. FTE subsequently provided Innovativ another incomplete shareholder list dated February 16, 2022. **Ex. 9**.

Exhibit 1
Page 10 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

32.     Evidence was presented that as a result, Innovativ had no choice but to subpoena the complete shareholder list directly from NATCO, FTE's transfer agent. **Ex. 27-28**.  On January 4, 2023, NATCO responded an produced a complete, properly-dated stockholder list as of February 3, 2022. *Id.* Consequently, Innovativ did not obtain a complete stockholder list until January 2023. *Id.*

33.     At trial, none of the Defendants presented any witness testimony or documentary evidence at trial disputing Innovativ's inspection claim.

### E.     THE FIRST AMENDMENT

34.     Based on its plain language, Section 2.12(a) of the FTE's Original Bylaws permit a majority of stockholders to amend the Bylaws without notice via written consent. **Ex. 3.0007**.

35.     On February 3, 2022, stockholders of FTE signed a written amendment to FTE's Original Bylaws ("First Amendment"), and served the same upon FTE and its registered agent. **Ex. 31**.  The recorded amount of shares consenting to the First Amendment was 40,524,050. *Id.*

36.     At trial, Coleman and Cunningham testified that the First Amendment functioned to prevent FTE, Beys, DeSilva, and Lateral from disenfranchising FTE stockholders.

37.     Pursuant to the First Amendment,

a.      Section 3.1 of the Original Bylaws was amended and restated in its entirety as follows:

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

3.1 General Powers. Subject to these bylaws, the Corporation's articles of incorporation and applicable law, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the Corporation managed under the direction of, its Board; provided, however, that:

a. No shares of the capital stock of the Corporation may be issued to any officer, director or stockholder (each, an "Insider") of the Corporation or any affiliate of an Insider without the approval of stockholders holding a majority of the voting power of the issued and outstanding shares of the Corporation's capital stock (such stockholders, the "Controlling Stockholders"). As used in these Bylaws, "affiliate" means a person, trust or entity who controls, is controlled by or is under common control with a specified person, trust or entity, along with the immediate family members of any such specified person along with any person or entity acting in concert with such specified person. "Control" in the preceding sentence means the power to direct the policies and affairs of an entity or trust;

b. Without the consent of the Controlling Stockholders the Board may not:

    i. adopt any shareholder rights, poison pill, staggered board or other plan that has an anti-takeover purpose or effect; and
    ii. issue any shares of stock with voting rights greater than the voting rights of shares of the Corporation's common stock.

b.    Section 3.2 of the Original Bylaws was amended and restated in its entirety as follows: "3.2 Number and Qualification of Directors. The Board shall consist of three members. Directors do not need to be residents of Nevada or shareholders of the Corporation."

c.    Section 5 of the Original Bylaws was erased in its entirety.

d.    The first paragraph and following sentence of Section 6.5 of the Original Bylaws, was amended and restated in its entirety as follows:

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 12 of 93

6.5 Restrictions on Transfer or Registration of Shares. Without the consent of the Controlling Stockholders, the Board may only impose restrictions on the transfer or registration of transfer of shares (including any security convertible into, or carrying a right to subscribe for or acquire shares) in the following circumstances:

e.  Section 6(c) of the Original Bylaws was erased in its entirety.

f.  Section 9.1 of the Original Bylaws was amended and restated in its entirety as follows: "9.1 Amendments. Without the consent of the Controlling Stockholders, the Corporation's Board may not amend, repeal, modify or supplement the Corporation's Bylaws at any time." **Ex. 31**.

38.  On March 3, 2022, Innovativ included in its Complaint a claim for declaratory relief, seeking an Order from this Court finding the First Amendment valid. *See* Complaint (Doc. 1) at ¶¶ 47-54.

39.  Throughout this litigation, FTE, Lateral, and DeSilva (collectively, "FTE Defendants") have each maintained the position that: (a) the First Amendment is invalid; (b) the First Amendment does not bind FTE's board; and (c) a majority of FTE stockholders did not consent to the First Amendment. *See* FTE Defendants' Answer to Amended Complaint (Doc. 335) at ¶¶ 21-26, 30, 214-221.

40.  In determining whether a majority of stockholders voted in favor of the First Amendment, the Court considers FTE's stockholder lists, as well as evidence relating to FTE common stock, Series A Preferred Stock, Series A1 Preferred Stock, Series I Preferred Stock, Series J-1 Preferred Stock, and Series J-2 Preferred Stock.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

13

Exhibit 1
Page 13 of 93

41.    As evidenced by FTE's stockholder listed prepared by NATCO showing the stockholders of record as of February 3, 2022, the Court finds that there were 55,174,005 shares of outstanding common stock eligible to vote in the First Amendment. **Ex. 28.0054**. Account statements provided by the beneficial stockholders (i.e., held in street name) who executed the First Amendment further evidences this amount. **Ex. 22**.

42.    The First Amendment itself, the stockholder list, and beneficial stockholder information all evidenced that FTE stockholders holding 27,713,050 shares of common stock exercised their consent to the First Amendment. **Ex. 22, 28, 31**. These include: Innovativ – 500,000 (**Ex. 28.0023**); Alex Szkaradek – 11,031,688 (**Ex. 28.0047**); Antoni Szkaradek – 11,031,688 (**Ex. 28.0047**); TTP8, LLC – 465,714 (**Ex. 28.0049**); Majique Ladnier – 1,790,118 (**Ex. 28.0027**); First Capital Master Advisor, LLC – 308,305 (**Ex. 28.0016-17**); Danish Mir – 891,566 (**Ex. 28.0033**); Khawaja Zargham bin Aamer – 702,000 (**Ex. 28.0002**); Stephen Goodwin – 250,000 (**Ex. 28.0018**); Peter Ghishan – 150,000 (**Ex. 28.0017**); Joseph Cunningham – 150,000 (**Ex. 28.0013**); Majique Ladnier (held in street name) – 348,440 (**Ex. 22.0001**); Dennis Shorrock (held in street name) – 12,500 (**Ex. 22.0009-15**); Patrick Shorrock (held in street name) – 5,000 (**Ex. 22.0009-15**); Timothy Swanston (held in street name) – 23,031 (**Ex. 22.0002-8**); Robert Swantson (held in street name) – 10,000 (**Ex. 22.0018-19**); and Eric Phelps (held in street name) – 43,000 (**Ex. 22.0016-17**).

43.    The Court further finds, as it already determined on March 8, 2023, that the Series J-1 and Series J-2 Preferred stock ("Series J Stock") held by

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 14 of 93

Lateral were not eligible to vote at the time of the First Amendment. *See* Order Granting Motion for Partial Summary Judgment (Doc. 208) at ¶¶ 4-5, 7.

44.     The Court further finds that, in addition to exercising their shares of common stock, the Szkaradeks also exercised their consent to the First Amendment as holders of the Series I Preferred stock ("Series I Stock"). **Ex. 189, 191**.

45.     Regarding to the voting rights of the Series I Stock, the Court finds that, on March 25, 2021, FTE's Board of Directors executed a written consent authorizing an amendment to the Series I Stock Certificate of Designation that provided the Szkaradeks with voting rights in the number of shares into which such stock was convertible. **Ex. 72**.   Then, on April 30, 2021, the Szkaradeks were issued certificates evidencing their Series I Stock. **Ex. 191**.   FTE, likewise, produced a preferred stockholder list evidencing their Series I Stock. **Ex. 189**.

46.     The Court finds that, when converted, the Szkaradeks' 200 shares of Series I Stock equates to 12,811,000 shares of common stock (64,055 each). **Ex. 72**.   Calculations by FTE's corporate counsel, Fernandez, corroborates this converted amount of 12,811,000. **Ex. 73**.

47.     Thus, the Court finds that the total number of eligible shares exercised in favor of the First Amendment must be increased by 12,811,000 to include the Series I Stock voted by the Szkaradeks. **Ex. 31**.

48.     Lastly, the Court finds that calculations by Fernandez evidence that the number of shares of Series A and Series A-1 Preferred Stock (collectively,

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

"Series A Stock") eligible to consent, at the time of the First Amendment, totals 2,503,275 shares.

49.     At trial, Defendants provided no alternative calculations with respect to the common stock, Series J Stock, Series I Stock, or Series A Stock.

50.     Based on the foregoing, the Court finds that the sum total shares of common stock (55,174,005), Series I Stock (12,811,000), and Series A Stock (2,503,275) eligible to consent at the time of the First Amendment equals 70,488,050.

51.     Moreover, of the 70,488,050 eligible shares, 40,524,050 consented to executing the First Amendment, which equates to approximately 57.49% of the total eligible shares; and, therefore, constitutes a majority.  At trial, Defendants provided no alternative calculations with respect to the First Amendment.

52.     Accordingly, the Court finds that the First Amendment was consented to by a majority of the FTE stockholders.

## F.     THE SECOND AMENDMENT

53.     On March 11, 2023, FTE stockholders signed a second written consent to amend to FTE's bylaws ("Second Amendment") and served the same on FTE, its counsel, and its registered agent. **Ex. 193**.

54.     At trial, Cunningham and Coleman testified that, like the First Amendment, the Second Amendment functioned to prevent FTE, Beys, and DeSilva from engaging in any liquidation event without stockholder approval.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

16

Exhibit 1
Page 16 of 93

55.     With respect to voting eligibility, the Court fully incorporates its Findings set forth in the preceding paragraphs, and finds that the sum total of share eligible to consent to the Second Amendment equals 70,488,050.

56.     With respect to the Second Amendment, a total of 25,875,953 shares of common stock exercised their consent as follows: Innovativ – 500,000 shares (**Ex. 28.0023**); Alex Szkaradek – 11,031,688 (**Ex. 28.0047**); Antoni Szkaradek – 11,031,688 (**Ex. 28.0047**); TTP8, LLC – 465,714 (**Ex. 28.0049**); Majique Ladnier – 1,790,118 (**Ex. 28.0027**); First Capital Master Advisor, LLC – 308,305 (**Ex. 28.0016-17**); Stephen Goodwin – 250,000 (**Ex. 28.0018**); Joseph Cunningham – 150,000 (**Ex. 28.0013**); Majique Ladnier (held in street name) – 348,440 (**Ex. 22.0001**).

57.     The Court finds that the above common stock, in addition to the 12,811,000 in converted Series I Stock, sums to 38,686,953 eligible shares that consented to the Second Amendment, which equates to approximately 54.88% of the total 70,488,050 eligible shares.

58.     Accordingly, the Court finds that the Second Amendment was consented to by a majority of the FTE stockholders.

## G.     THE SETTLEMENT AGREEMENT

59.     Apava and Leider purport to have received stock from FTE by way of a settlement agreement between FC-RET and FTE dated November 9, 2022, ("Settlement Agreement"). **Ex. 125.0003**.  The Settlement Agreement purports to cancel the Szkaradeks' stock and transfer the same to FC-RET, Apava, Leider, and their designees. **Ex. 125.0001-0003**.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

17

Exhibit 1
Page 17 of 93

60.     The Szkaradeks were not parties to the Settlement Agreement, and did not consent to any such cancellation or transfer, and Defendants presented no evidence at trial to the contrary. **Ex. M, N**.

61.     Coleman and Cunningham, testified that the Settlement Agreement functioned to disenfranchise the Szkaradeks and FTE majority stockholders, and to give "FTE the right, in its sole discretion, to accept or reject any vote" of the Szkaradeks' shares. **Ex. 125.0004**. Communications between Beys and DeSilva further show their intent to issue the stock to FC-RET and its designees via the Settlement Agreement because they could not otherwise obtain the Szkaradeks' shares. **Ex. 194-205, 209, 211-221**.

62.     Forelle confirmed at trial that he knew the Szkaradeks never transferred the stock, and further admitted that FC-RET intervened in the Delaware litigation in an effort to obtain the Szkaradeks' stock. **Ex. 170.001-002**.

63.     The FTE stockholder list as of February 3, 2022, provided by NATCO does not show FC-RET, Apava, Leider, or any of the designees listed in the purported settlement agreement as stockholders of record. *C.f.*, **Ex. 28, 125.0012**. FTE also alleges in the Delaware Action that FC-RET is not a stockholder of record. **Ex. 162**.

64.     FC-RET had forfeited its corporate charter in Maryland at the time the Settlement Agreement would purport to become effective on November 9, 2022. **Ex. 222**. Forelle testified that he only filed Articles of Revival for FC-RET nine (9) months thereafter on August 10, 2023. This calls into question whether FC-RET could have even validly entered into the Settlement Agreement to

Exhibit 1
Page 18 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

transfer the shares because the State of Maryland's corporate law provides that a corporation that forfeits its charter ceases to exist as a legal entity.[5]

65.     The Court takes into consideration evidence that the Settlement Agreement could, alternatively, be viewed as an issuance rather than a transfer.

66.     The evidence shows that Defendants and their attorneys spent time scrubbing the word "issuance" from the Settlement Agreement. *See, e.g.,* **Ex. 213**.[6]     Conversely, certain correspondence surrounding the Settlement Agreement described the transaction as an "issuance."   For example, Forelle stated: "So to be clear: We need to set the shares up as follows that are *issued* to First Capital with the ability to reassign them immediately to its creditors." **Ex. 212.002** (emphasis added).   Similarly, Apava, Leider, and FC-RET's counsel stated: "My understanding is that FTE *issued* the stock certificates directly and not through a purchase from a third party." **Ex. 124** (emphasis added).   In discussing the terms of the Settlement Agreement, Beys, expressly stated that: "FTE will *issue* 11,031,688 common shares to the FC REIT (and seek to cancel the equivalent number of shares that both parties allege to have been wrongfully withheld by the Szkaradeks)[.]" **Ex. 211** (emphasis added).

67.     Sections 3.1(a) and 3.1(b) of the First Amendment require majority stockholder approval for stock issuances. **Ex. 31**.   Section 6.1 of the Original Bylaws require Board approval for stock issuances and Section 3.13 of the

---

[5] Maryland Courts have held that "[w]hen a corporation's charter is forfeited for non-payment of taxes or failure to file an annual report, the corporation is dissolved by operation of law and ceases to exist as a legal entity." *Kroop & Kurland, P.A. v. Lambros*, 118 Md.App. 651, 656, 703 A.2d 1287 (1998).

[6] Nonetheless, Section 2(c) of the Settlement Agreement states that FTE warrants it would not challenge "the validity of *issuance* of the Stock after it is transferred to the FC REIT pursuant to the terms of [the Settlement Agreement]." **Ex. 125.0003** (emphasis added).

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 19 of 93

Original Bylaws require Board approval to be done either at a meeting or via written Board resolution. **Ex. 3.0010, 3.0014**.

68. No evidence presented at trial showed that a majority of eligible stockholders of FTE's stock consented to issuances to Apava, Leider, FC-RET, or any of their designees, per rules under the First Amendment.

69. No evidence presented at trial showed any written Board resolution approving such issuances. Similarly, Cunningham testified that no Board meeting ever took place regarding such issuances, and that Cunningham never authorized or consented to any such issuances as a director of FTE.

70. Regardless, to the extent Apava, Leider, and FC-RET actually received any shares by way of the Settlement Agreement, the Court finds they had to have received them directly from FTE as an issuance and not a transfer. This is because the shares came from FTE (the stock issuer) and not the Szkaradeks (the existing stockholder). **Ex. 125.0003, M, N**. Indeed, Forelle confirmed at trial that the shares ultimately received by Apava, Leider, FC-RET, and its designees, came directly from FTE.

71. In conclusion, the Szkaradeks did not consent to the transfer of their shares to Apava, Leider, FC-RET, nor any of their designees; thus, any such transfer was invalid. Moreover, neither the Board, nor the stockholders holding a majority of the voting power of the issued and outstanding shares of the FTE's capital stock, approved of the issuances; thus, any such issuance was invalid. As such, the Court finds that Apava, Leider, FC-RET, and their designees under the Settlement Agreement, are not valid stockholders of FTE.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

20

Exhibit 1
Page 20 of 93

## H.    THE THIRD AMENDMENT

72.    On or about March 14, 2023, purported stockholders of FTE signed a majority written shareholder consent to amend the FTE Bylaws ("Third Amendment") which sought to supersede the Original Bylaws, First Amendment, and Second Amendment. **Ex. 85**.  On March 15, 2023, FTE filed a shareholder update on a form 8-K, disclosing that its Bylaws had been amended and restated in their entirety by written consent of a purported majority of the FTE shareholders. **Ex. 83**.

73.    In determining voting eligibility, the Court finds that the apparent signatories to the Third Amendment included: Richard DeSilva, Lateral BVM Feeder, LLC; Lateral Home Agent, LLC; Lateral Partners, LLC; Lateral U.S. Credit Opportunities, Fund, L.P.; Niagara Nominee, LP; Liber Holdings, LLC; WVP Emerging Manager Private Fund, LLC; Lawrence Rosen; Fred Sacramone; Brian McMahon; Richard & Jane Leider Revocable Trust; Apava, Inc.; and First Capital Real Estate Trust, Inc. **Ex. 85**.

74.    First, DeSilva personally signed the Third Amendment on behalf of the following persons and entities holding shares of FTE common stock: Richard DeSilva – 150,000 (**Ex. 28.0013**); Lateral BVM Feeder, LLC – 227,242 (**Ex. 28.0028**); Lateral Partners, LLC – 17,963 (**Ex. 28.0028**); Lateral U.S. Credit Opportunities, Fund, L.P. – 8,624,661 (**Ex. 28.028**); Richard DeSilva as proxy for Brian McMahon – 713,026 (**Ex. 28.032**); Niagara Nominee, LP – 2,166,085 (**Ex. 28.0036**); Richard DeSilva as proxy for Fred Sacramone – 713,026 (**Ex. 28.0042**).  Although DeSilva also signed on behalf of Lateral Home Agent, LLC,

Exhibit 1
Page 21 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

and Liber Holdings, LLC, these entities do not appear on the FTE stockholder list. *See* **Ex. 28**. At trial, Defendants presented no evidence to the contrary. Thus, the Court finds DeSilva's signature on the Third Amendment represented a total of 12,612,003 shares of FTE common stock in favor of the Third Amendment.

75.   Second, as this Court already ruled, the Series J Stock held by Lateral was not eligible to vote at this time. *See* Section II(E), *supra*; *see also* Order Granting Motion for Partial Summary Judgment (Doc. 208) at ¶¶ 4-5, 7. Thus, the Court finds that Lateral's signature represented 0 shares of FTE preferred stock in favor of the Third Amendment.

76.   Third, the managing member of WVP Emerging Manager Private Fund LLC ("WVP") signed the Third Amendment, representing 558,256 shares of FTE common stock. **Ex. 28.0052**. Thus, the Court finds that WVP represented 558,256 shares of FTE common stock in favor of the Third Amendment.

77.   Fourth, an individual named Lawrence Rosen also appears to have signed the Third Amendment, but Rosen does not appear on the FTE stockholder list. *See* **Ex. 28**. At trial, Defendants presented no evidence to the contrary. Thus, the Court finds that Rosen's signature represented 0 shares of FTE common stock in favor of the Third Amendment.

78.   Finally, Forelle testified at trial that he signed the Third Amendment on behalf of Apava (**Ex. 85.007**), FC-RET as its president (**Ex. 85.008**), and that Richard Leider, signed as trustee of Leider (**Ex. 85.006**). As set forth above, Apava, Leider, and FC-RET do not appear on the FTE stockholder list. *See* **Ex.**

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 22 of 93

**28**.  Indeed, as set forth above in detail, the evidence presented at trial shows that Apava, Leider, and FC-RET are not valid stockholders of FTE.  Thus, Apava, Leider, and FC-RET represented 0 shares of FTE common stock in favor of the Third Amendment.

79.     Therefore, the Third Amendment was executed stockholders holding a total of 13,170,259 shares, constituting a total of 18.68% of the outstanding stock (i.e., 13,170,259 / 70,488,050 = 18.68%). Ex. 85.[7] At trial, Defendants provided no alternative calculations with respect to the Third Amendment.

80.     Accordingly, the Court finds that a majority of the FTE stockholders did not consent to the Third Amendment.

### I.      DEFENDANTS' BAD FAITH CONDUCT

81.     Below, the Court sets forth its relevant factual Findings regarding certain conduct by Defendants, and the nature of said conduct, which Innovativ argues as the basis for its special damages request.  Further, the Court breaks down said conduct and findings thereto individually by Defendant.

#### 1.      **Bad Faith Conduct by FTE**

82.     On March 3, 2022, Innovativ filed its complaint against FTE. *See* Complaint (Doc. 1).  At that time, Innovativ's claims pertained only to the validity of the First Amendment and Innovativ's request to inspect the stockholder list. *Id.*

---

[7]  The Court's Findings above, with respect to voting eligibility on the First Amendment and Second Amendment, also apply to the Third Amendment.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

23

Exhibit 1
Page 23 of 93

83. On June 30, 2022, this Court issued a Writ of Mandate compelling FTE to allow Innovativ to inspect the stockholder list pursuant to NRS 78.105. *See* Order Granting in Part FTE's Counter-Motion to Dismiss, Granting in Part Plaintiffs' Petition for a Writ of Mandate, and Granting Plaintiffs' Motion to Strike ("Inspection Order") (Doc. 57) at 9.

84. As previously stated, the Court finds that FTE refused Innovativ access to the stockholder list on multiple occasions.

85. The evidence presented at trial supports the notion that FTE knew that Innovativ was a stockholder of record at the time that Innovativ made its requests to inspect the stockholder list. **Ex. 28, 95, 107, 123**.

86. Despite the foregoing Inspection Order (Doc. 57), FTE still failed to provide a complete stockholder list. Indeed, Innovativ did not obtain a complete stockholder list until January 2023, after subpoenaing NATCO. **Ex. 27, 28.**

87. Based on the foregoing, the Court finds that Innovativ had no choice but to bring this action as the only viable avenue for inspecting the stockholder list.

88. The Court further finds that the refusal by FTE to produce the stockholder list, directly and proximately caused Innovativ to retain legal counsel to vindicate its rights, given that its sole legal remedy comprised of seeking judicial and equitable relief from this Court. **Ex. 29**.

89. The Court further finds that FTE's initial refusal, despite knowledge of Innovativ's status as a stockholder, in addition to FTE's failure thereafter to

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 24 of 93

produce a complete stockholder list in violation of the Inspection Order (Doc. 57), each constitutes bad faith conduct on behalf of FTE.

90.     Based on the record, Innovativ pursued litigation with respect to the stockholder list from December 2022, when it made its initial demand, to January 2023, when NACTO finally produced the complete stockholder list.  The invoices provided by Innovativ show fees and costs for this period in the amount of $332,382.43. **Ex. 29.0001-29.0128**.

91.     In sum, the Court finds that such fees and costs arose in the context of this litigation, which was necessitated as the natural and proximate consequence of FTE's bad faith conduct.

## 2.     **Bad Faith Conduct by FTE, Lateral, and DeSilva**

92.     On February 3, 2022, the First Amendment took effect. **Ex. 3**.  As previously stated, the FTE Defendants (i.e., FTE, Lateral, and DeSilva) presented no evidence at trial disputing the validity of the First Amendment, the stockholder list at the time, the beneficial stockholder information verifying the votes of the First Amendment signatories, or any alternative method for calculating total valid shares.  To the contrary, Fernandez' own calculation of the total valid shares for the First Amendment matches that of this Court. **Ex. 73**.

93.     The plain language of the Original Bylaws permitted amendments thereto via written consent by a majority of valid shares voted by the stockholders. **Ex. 3.0007**.  The FTE Defendants later utilized a similar provision as grounds for the Third Amendment. **Ex. 85**.  Thus, the Court finds that the FTE

**JOANNA S. KISHNER**
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 25 of 93

Defendants likely knew, or should have known, that the Original Bylaws allowed amendment by written consent.

94. On August 17, 2022, Beys and DeSilva, purporting to act on behalf of FTE, issued a proxy statement wherein they noticed a shareholder meeting to amend and restate the Original Bylaws, reverse the First Amendment, and moot Innovativ's claim ("Proxy Statement"). **Ex. 2**. Cunningham testified at trial that Beys and DeSilva issued the Proxy Statement without his consent.

95. Coleman testified that Innovativ was consequently forced to seek emergency relief from this Court to stop FTE, Beys, and DeSilva from conducting the stockholder meeting under the Proxy Statement. *See* Emergency Motion for Ex Parte Temporary Restraining Order (Doc. 73).

96. On August 25, 2022, this Court issued its Order granting Innovativ's emergency relief and temporarily enjoined Beys, DeSilva, FTE from proceeding with the meeting, noticed under the Proxy Statement ("First Injunction"), until a Preliminary Injunction hearing could take place. *See* Order Granting Ex Parte Emergency Motion for Temporary Restraining Order (Doc. 74).

97. On August 29, 2022, Beys, DeSilva, and FTE agreed to cancel the stockholder meeting noticed under the Proxy Statement, thereby rendering the First Injunction, and pending Preliminary Injunction request moot. *See* Stipulation and Order and Joint Request (Doc. 78).

98. On September 12, 2022, Beys and DeSilva attempted to appoint Jeremy Stillings ("Stillings") to the Board of FTE over the objection of Cunningham. *See* Order Granting Motion for Temporary Restraining Order (Doc.

Exhibit 1
Page 26 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

126). Notably, the First Amendment had previously changed Section 3.2 of the FTE Bylaws to limit FTE's board to only three (3) directors. **Ex. 31**.

99. Coleman testified that Innovativ was forced to seek emergency relief from this Court to stop FTE, Beys, and DeSilva from appointing Stillings in violation of the FTE Bylaws. *See* Motion for a Preliminary Injunction (Doc. 115).

100. On September 22, 2022, this Court issued its Order granting Innovativ emergency relief and temporarily enjoined Beys, DeSilva, and FTE from allowing Stillings to act as a director of FTE ("Second Injunction") until a Preliminary Injunction hearing could take place. *See* Order Granting Motion for Temporary Restraining Order (Doc. 126).

101. After substantial briefing on the issue, the Preliminary Injunction hearing occurred on October 6, 2022, wherein the parties presented substantial documentary and testimonial evidence to the Court. *See* Order Granting Motion for Preliminary Injunction (Doc. 166).

102. On November 7, 2022, the Court entered a Preliminary Injunction further enjoining Beys, DeSilva, and FTE from allowing Stillings to act as a director of FTE ("Third Injunction"). *Id.* As confirmed by Coleman at trial, Innovativ also posted a $25,000.00 bond to secure the Third Injunction. *See* Notice of Posting Bond (Doc. 168).

103. On November 9, 2022, Beys and DeSilva, as directors of FTE, entered into the Settlement Agreement, which attempted to unilaterally cancel and reissue the Szkaradeks' stock, without their consent, to FC-RET and its

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 27 of 93

designees. **Ex. 125**. "FTE the right, in its sole discretion, to accept or reject any vote" of Szkaradeks' shares. **Ex. 125.0004**.

104. As stated prior, in entering the Settlement Agreement, FTE intended to disenfranchise the Szkaradeks and FTE majority stockholders, without Board approval, and in violation of the amended FTE bylaws, in an attempt to obtain and control stockholder votes. The testimony at trial of Coleman, Cunningham, Forelle, and the documentary evidence surrounding the Settlement Agreement, corroborate an intent. **Ex. 194-205, 209, 211-222**.

105. On March 8, 2023, the Court entered Partial Summary Judgment in favor of Innovativ, finding that the Series J Stock did not have voting rights. *See* Order Granting Motion for Partial Summary Judgment (Doc. 208) at ¶¶ 4-5, 7.

106. Also on March 8, 2023, the Delaware Order was entered, confirming that FC-RET, Apava, or Leider were not eligible to vote the Szkaradeks shares.[8] **Ex. 136**.

107. On March 11, 2023, the Second Amendment took effect. **Ex. 192**. As previously stated, the FTE Defendants presented no evidence at trial disputing the validity of the Second Amendment, the stockholder list at the time, the beneficial stockholder information verifying the votes of the Second Amendment signatories, or any alternative method for calculating total valid shares. Likewise, Fernandez' calculations corroborate that the Second Amendment reached majority consent. **Ex. 73**.

---

[8] *See supra*, note 4.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

108.     As with the First Amendment, the Court finds that the FTE Defendants likely knew, or should have known, that the amended FTE Bylaws allowed amendment by written consent, and that a majority of FTE stockholders consented to the Second Amendment. **Ex. 28**.

109.     On March 12, 2023, Beys and DeSilva, purportedly acting on behalf of FTE as the Board, but without the consent of Cunningham, attempted to cancel Innovativ's stock in FTE. **Ex. 82**.

110.     On March 14, 2023, DeSilva and Lateral attempted to reverse the First Amendment and Second Amendment, via the purported Third Amendment. **Ex. 85.**     Despite objections by Cunningham, DeSilva further authorized publicizing the validity of the Third Amendment. **Ex. 83**.

111.     As stated, DeSilva signed the Third Amendment on behalf of Lateral Home Agent, LLC, and Liber Holdings, LLC, entities which do not appear on the FTE stockholder list. **Ex. 28**.     Further, DeSilva attempted to vote the Series J Stock, despite this Court's prior Partial Summary Judgment declaring them non-voting. *See* Order Granting Motion for Partial Summary Judgment (Doc. 208) at ¶¶ 4-5, 7.     DeSilva also signed the Third Amendment, with full knowledge of the Delaware Order, which ruled that FC-RET and Apava Defendants could not vote the Szkaradeks' stock. **Ex. 136**.

112.     On March 17, 2023, Innovativ again moved for injunctive relief to prevent FTE, DeSilva, and Lateral from further interfering with Innovativ's stockholder rights, and prevent all Defendants from taking action under the

Exhibit 1
Page 29 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

purported Third Amendment. *See* Emergency Motion for Ex Parte Temporary Restraining Order (Doc. 212).

113.    On March 30, 2023, this Court issued its Order granting Innovativ emergency relief and temporarily enjoined FTE Defendants from taking any action under the Third Amendment or to interfere with Innovativ's stockholder rights ("Fourth Injunction") until a Preliminary Injunction hearing could take place. *See* Order Granting Ex Parte Emergency Motion for Temporary Restraining Order (Doc. 224).  Innovativ also posted a bond $5,000.00 to secure the Fourth Injunction. *See* Notice of Posting Bond (Doc. 229).

114.    On April 3, 2023, Innovativ moved to hear the Preliminary Injunction on shortened time. *See* Ex Parte Motion for Preliminary Injunction on Order Shortening Time (Doc. 232).   After substantial briefing on the matter, the Preliminary Injunction Motion was argued before the Court on April 12, 2023.

115.    On May 3, 2023, the Court entered a Preliminary Injunction further enjoining FTE Defendants from taking any action under the Third Amendment or further interfering with Innovativ's stockholder rights ("Fifth Injunction"). *See* Order Granting Preliminary Injunction (Doc. 252).

116.    Based on the foregoing, the Court finds that Innovativ had no choice but to bring this action as the only viable avenue for protecting its shareholder rights, to defend the validity of the First and Second Amendments, and to challenge the validity of the purported Third Amendment.

117.    The Court further finds that the refusal by FTE Defendants to recognize the validity of the First and Second Amendments, and insistence on

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

30

Exhibit 1
Page 30 of 93

enforcing the Third Amendment, directly and proximately caused Innovativ to retain legal counsel to vindicate its rights, as its sole legal remedy, included comprised of seeking judicial and equitable relief from this Court. **Ex. 29**.

118.    The Court further finds that Innovativ deomonstrated that the refusal by the FTE Defendants to recognize the validity of the First and Second Amendments, despite possessing a calculation of the majority consent threshold, and understanding that the plain language of the FTE Bylaws permitted via written consent by a majority of valid shares voted by the stockholders, constituted bad faith conduct on behalf of FTE, DeSilva, and Lateral.  Further, the Court finds that the consistent efforts by FTE Defendants to undermine the rights of Innovativ, Cunningham, and FTE stockholders also constitutes bad faith conduct.

119.    Based on the record, Innovativ pursued litigation with respect to the First, Second, and Third Amendments from December 2022, when it made its initial demand, to January 2025, when trial in this matter completed.   The invoices provided by Innovativ show fees and costs for this period in the amount of $1,522,319.23. **Ex. 29.0001-29.0237**.

120.    Similarly, as to Cunningham, the Court finds that credible evidence supports the fact that Cunningham incurred $145,000.00 in attorney fees through the conclusion of trial.  The Court notes that no testimony or examination at the time of trial disputed any of the fees asserted by Cunningham (with the exception of Apava and Leider), with no other Defendant appearing at the time of

Exhibit 1
Page 31 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Cunningham's testimony and no other Defendant examining Cunningham on the fees claimed.

121.     In sum, the Court finds that such fees and costs arose in the context of this litigation, which was necessitated as the natural and proximate consequence of FTE Defendants' bad faith conduct. Thus, the Court finds that FTE, Lateral, and DeSilva are jointly and severally liable for the **$1,522,319.23** sought by Innovativ, and **$145,000.00** sought by Cunningham.

### 3.     <u>Bad Faith Conduct by Apava and Leider</u>

122.     As an initial matter, the Court ruled in its Order Granting in Part and Denying in Part Apava Defendants' Rule 52 Motion (filed separately) that "given the undisputed chronology and plain language of the pleadings," the Court found that Apava Defendants cannot be held liable for any special damages arising out of the First and Second Bylaws Amendments.  The Court further set forth that all Defendants, including the Apava Defendants, are bound by the Court's ultimate ruling as to the validity, or lack thereof, of each of the Bylaws Amendments.

123.     With respect to the validity of the Third Bylaws Amendment and stock issuance under the Settlement Agreement, the Court ruled in said Order Granting in Part and Denying in Part Apava Defendants' Rule 52 Motion, that the Court declined to make a final ruling on the issues of good faith; and instead, referred the parties to the Findings of Fact and Conclusions of Law and Judgment herein.

124.     On March 2023, Apava Defendants exercised their consent to the Third Amendment. **Ex. 85**.  Notably, this purported Third Amendment, by its own

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 32 of 93

terms, improperly attempted to restate and unwind the First and Second Amendment. *Id.*

125.    Apava Defendants presented no evidence at trial that the Third Amendment was consented to by a majority of FTE stockholders.  Conversely, the FTE stock ledger certified by FTE's transfer agent, NATCO, conclusively established that Apava and Leider were not stockholders at the time. **Ex. 27, 28**.

126.    The evidence shows that Forelle knew the Szkaradeks never transferred the stock, and admitted at trial that FC-RET intervened in the Delaware litigation in an effort to obtain the Szkaradeks stock. **Ex. 170.001-002**.

127.    Further, communications between Forelle and Beys show that they could not validly obtain the Szkaradeks' shares, resulting in the Settlement Agreement to invalidly issue new shares to Apava Defendants. **Ex. 125, 194-222**.

128.    Based on the above evidence, the Court finds that Apava Defendants executed the Third Amendment with full knowledge the shares had never been transferred by the Szkaradeks. **Ex. 125**.

129.    Likewise, the Court finds that Cunningham, as a director, never approved of an issuance, nor did a necessary majority of shareholders, as required under the amended FTE Bylaws.

130.    The Court finds that Innovativ had no choice but to bring this action as the only viable avenue for challenge the validity of the stock issuance to Apava Defendants and the validity of the Third Amendment.

131.    The Court further finds that Forelle, acting on behalf of Apava only, proximately caused Innovativ to retain legal counsel to vindicate its rights as its

Exhibit 1
Page 33 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

sole legal remedy comprised of seeking judicial and equitable relief from this Court. **Ex. 29**.

132.    The Court further finds that Forelle, on behalf of Apava only, attempting to vote the Szkaradeks' shares, in light of the communications and testimony provided that show Forelle had knowledge that the shares had not been validly issued, constitutes bad faith conduct on behalf of Apava.    While there was evidence that Leider took part in the Third Amendment, Plaintiff did not provide evidence of Leider's role other than attempting to vote for the Third Bylaw Amendment.    As such, Plaintiff did not establish that Leider acted in bad faith such as to meet the standards necessary to impose attorney fees as special damages against Leider.

133.    Based on the record, Innovativ pursued litigation with respect to the stock issuance from March 2023, when the Apava Defendants were added, to January 2025, when trial in this matter completed. The invoices provided by Innovativ show fees and costs for this period in the amount of $506,940.95. **Ex. 29.0149-29.0237**.

134.    In sum, the Court finds that such fees and costs arose in the context of this litigation, which were necessitated as the natural and proximate consequence of Apava's (not Leider as there was not sufficient evidence) bad faith conduct in conjunction with the conduct of FTE and other Defendants. Thus, Apava is jointly and severally liable for the fees and costs **$506,940.95**

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

34

Exhibit 1
Page 34 of 93

sought by Innovativ with respect to the Third Amendment.[9]  As stated, Cunningham did not seek special damages as to the Apava Defendants.

## J.    MISCELLANEOUS PROCEDURAL FINDINGS

135.    On December 16, 2024, this Court entered an Order sanctioning each of the Defendants for discovery abuses. *See* Order Granting in Part and Denying in Part Without Prejudice Plaintiff Innovativ Media Group Inc.'s Motion for Case Ending Sanctions Against Defendants ("Sanctions Order") (Doc. 396). The Sanctions Order had various procedural implications, as outlined below.

136.    Pursuant to the Sanctions Order, the Court ordered the following with respect to FTE:

> **THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion with respect to defendant FTE is hereby **GRANTED** as follows: (1) FTE's answers and affirmative defenses are hereby stricken; (2) FTE is barred from introducing documentary evidence, other than what was produced in this case prior to the Discovery Cutoff; (3) FTE is barred from introducing any testimonial evidence regarding any of the topics set forth in Innovativ's NRCP 30(b)(6) deposition notice to FTE; (4) FTE may introduce testimonial evidence at trial, but only to the extent it pertains to documents produced in this case prior to the Discovery Cutoff; (5) FTE shall comply with the Court's orders regarding the Undisputed Requests and the July 12, 2023 order granting the motion to compel, and produce all documents and communications responsive to the FTE Requests on or before December 2, 2024; (6) FTE's objections to all the FTE Requests are waived; (7) FTE shall pay Plaintiff's reasonable attorney fees and costs incurred with respect to the misconduct described herein, in an amount to be calculated and allocated by the Court after Plaintiff's appropriate motion for the same, which

---

[9] The Court notes that FTE, Lateral, and DeSilva are also jointly liable for the $506,940.95 amount, given that this amount comprises a portion of the total $1,522,319.23, which the Court found joint-and-several liability for as to FTE, Lateral, and DeSilva, as set forth herein.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

35

Exhibit 1
Page 35 of 93

shall be filed no later than seven (7) days of notice of entry of this order; and (8) the Court shall continue to monitor compliance with this order and defers ruling on Plaintiff's request for a default judgment.

137. Pursuant to the Sanctions Order, the Court ordered the following with respect to DeSilva:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion, with respect to defendant DeSilva, is hereby **GRANTED** as follows: (1) DeSilva's answers and affirmative defenses are stricken; (2) DeSilva is barred from introducing documentary evidence, other than what was produced in this case prior to the Discovery Cutoff; (3) DeSilva is barred from introducing testimonial evidence at trial regarding the topics set forth in Innovativ's NRCP 30(b)(6) deposition notice to FTE; (4) DeSilva may testify at trial, but he may only testify at trial regarding documents produced in this case prior to the Discovery Cutoff; (5) DeSilva shall produce all discovery requested by Plaintiff on or before December 2, 2024; (6) DeSilva's objections to all discovery requested by Plaintiff are waived; (7) DeSilva shall pay Plaintiff's reasonable attorney fees and costs incurred with respect to the misconduct described herein, in an amount to be calculated and allocated by the Court after Plaintiff's appropriate motion for the same, which shall be filed no later than seven (7) days of notice of entry of this order; and (8) the Court shall defer ruling on Plaintiff's request for a default judgment.

138. Pursuant to the Sanctions Order, the Court ordered the following with respect to Lateral:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion with respect to defendant Lateral is hereby **GRANTED** as follows: (1) Lateral shall produce all discovery requested by Plaintiff on or before December 2, 2024; (2) Lateral's objections to all discovery requested by Plaintiff are waived; (3) Lateral shall pay Plaintiff's reasonable attorney fees and costs incurred with respect to the misconduct described herein, in an amount to be calculated and allocated by the Court after Plaintiff's appropriate motion for the same,

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

36

Exhibit 1
Page 36 of 93

which shall be filed no later than seven (7) days of notice of entry of this order; and (4) the Court shall defer ruling on Plaintiff's request for a default judgment.

139.    Pursuant to the Sanctions Order, the Court ordered the following with respect to Apava and Leider:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion with respect to defendants Apava and Leider is hereby **GRANTED** as follows: (1) Apava and Leider affirmative defenses regarding personal jurisdiction are hereby stricken; (2) Apava and Leider's objections to all discovery requested by Plaintiff are waived; (3) Apava and Leider shall make initial disclosures as required under NRCP 16.1, respond to Plaintiff's outstanding Requests December 2, 2024; (4) Apava and Leider shall appear for their depositions within two (2) weeks, or other date otherwise set by Plaintiff; (5) Apava and Leider shall pay Plaintiff's reasonable attorney fees and costs incurred to take the depositions of Apava and Leider, in an amount to be determined by the Court after Plaintiff's appropriate motion for the same; (6) Apava and Leider shall also pay Plaintiff's reasonable attorney fees and costs incurred with respect to the misconduct described herein, in an amount to be calculated and allocated by the Court after Plaintiff's appropriate motion for the same, which shall be filed no later than seven (7) days of notice of entry of this order; and (7) the Court shall defer ruling on Plaintiff's request for a default judgment.

140.    On May 5, 2025, this Court issued an Order Granting In Part and Denying In Part Innovativ's Motion for Attorney's Fees and Expenses ("Fees Order") (Doc. 441), which determined the fees and costs to be awarded in light of the discovery abuses outlined within the Sanctions Order.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

37

Exhibit 1
Page 37 of 93

141.   The Fees Order (Doc. 441) granted attorney fees to Innovativ, as set forth therein, based on invoices dated from the period of June 6, 2024, to November 22, 2024, inclusive, in the following amounts: $13,740.73 in attorney fees and $1,788.55 in costs from FTE; $11,035.23 in attorney fees and $418.15 in costs from DeSilva; $10,561.48 in attorney fees and $4.20 in costs from Lateral; $12,134.40 in attorney fees and $445.15 in costs from Apava; and $12,134.40 in attorney fees and $419.50 in costs from Leider.[10]

142.   FTE, DeSilva, and Lateral have appeared and consented to personal jurisdiction in this forum.   The Court also finds that it has personal jurisdiction over FTE because it is incorporated in in Nevada.   The Court also finds that it has personal jurisdiction over DeSilva and Lateral because their activities and contacts in Nevada have been, and continue to be, so substantial, continuous, and systematic that it is deemed present in the forum; and their obligations, acts, and omissions complained of herein were incurred and committed, in whole or in part, in Nevada; and thus, they have sufficient contacts with this forum such that the exercise of personal jurisdiction over them will not offend traditional notions of fair play and substantial justice.

143.   The Court finds that Apava and Leider have appeared and consented to personal jurisdiction in this forum.   The Court also finds that it has personal jurisdiction over Apava and Leider because their activities and contacts

[10] Due to FTE's counsel(s) trial actions, including leaving trial without the knowledge and consent of the Court or co-counsel, Mr. Jones, should have resulted in additional sanctions and is contrary to the Rules of Professioanl Conduct. The Court however, has chosen not to issue sanctions at this juncture, but may review the issue in the future if it deems appropriate to do so.  No ruling herein is impacted by those actions as the rulings are purely on the evidence presented in accordance with applicable rules and case law.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

38

Exhibit 1
Page 38 of 93

in Nevada have been, and continue to be, so substantial, continuous, and systematic that it is deemed present in the forum; and their obligations, acts, and omissions complained of herein were incurred and committed, in whole or in part, in Nevada; and thus, they have sufficient contacts with this forum such that the exercise of personal jurisdiction over them will not offend traditional notions of fair play and substantial justice.

144. If any of these Findings of Fact are more properly treated as Conclusions of Law, then they shall so be treated.

### III. CONCLUSIONS OF LAW

Now, therefore, based on the Findings of Fact filed herein, the Court hereby makes the following Conclusions of Law.

### A. PLAINTIFFS' CLAIMS FOR RELIEF AGAINST FTE

1. Innovativ has brought the following claims for relief against FTE: (1) violation of NRS 78.105; (2) declaratory relief regarding the validity of the First Amendment; (3) declaratory relief regarding the validity of the Second Amendment; (4) declaratory relief regarding the validity of the Third Amendment; (5) declaratory relief regarding the validity stock issuances made under the Settlement Agreement; (6) declaratory relief regarding the validity purported cancellations of Innovativ's stock; (7) injunctive relief; and (8) appointment of a receiver. *See* Supplemental Complaint (Doc. 280) at 23-28.

2. Cunningham intervened and brought the following claims for relief against FTE: (1) declaratory relief regarding the validity of the First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3)

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

39

Exhibit 1
Page 39 of 93

declaratory relief regarding the validity of the Third Amendment; (4) declaratory relief regarding the validity stock issuances made under the Settlement Agreement; (5) injunctive relief; and (6) appointment of a receiver. *See* Complaint-in-Intervention (Doc. 298) at 17-21.

3.      As a threshold matter, the Court concludes that FTE's Answer and Affirmative Defenses to all claims were stricken. *See* Sanctions Order (Doc. 396) at 17-18.      Thus, FTE has no legal defenses to any of Plaintiffs' claims. Notwithstanding the foregoing, the Court considers whether Plaintiffs have met their burden on each of their claims against FTE.

4.      The Court further concludes that FTE failed to file an Answer as to any claim asserted by Cunningham, despite this Court ordering FTE to file an Answer. Accordingly, FTE has waived all defenses as to the claims asserted by Cunningham.

### 1.      Violation of NRS 78.105

5.      Innovativ seeks relief against FTE under NRS 78.105 for failing to comply with Innovativ's requests to inspect the FTE stockholder list.      NRS 78.105(2) entitles qualified stockholders (a stockholder of record for at least 6 months) to inspect and copy, upon five days'-written demand, the records that a corporation is required by NRS 78.105(1) to maintain at its principal office or with its custodian of records.  These records include:

> *A stock ledger or a duplicate stock ledger*, revised annually not later than 60 days after the date by which an annual list is required to be filed pursuant to NRS 78.150, containing only the names, alphabetically arranged, of all persons who are stockholders of record of the corporation, showing their places of residence, if known, and the number of shares held by them respectively.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

40

Exhibit 1
Page 40 of 93

NRS 78.105(1)(c) (emphasis added).

6. If a stockholder makes a written demand, the stockholder must also provide an affidavit stating that their wish to inspect is "not desired for a purpose which is in the interest of a business or object other than the business of the corporation, and that the stockholder . . . has not at any time sold or offered for sale any list of stockholders . . . or aided or abetted any person in procuring such record of stockholders for any such purpose." NRS 78.105(4).

7. Nevada law defines the term "stockholder of record" by statute to mean "a person whose name appears on the stock ledger of the corporation as the owner of record of shares of any class or series of the stock of the corporation." NRS 78.010(k). NRS 78.105(1)(c) further provides: "Absent manifest error or actual fraud, the stock ledger of the corporation, as maintained by the corporation or its designated transfer agent, shall **conclusively** determine the stockholders of record of the corporation." (emphasis added).

8. First, the Court concludes Innovativ has met its burden to establish that it a valid, qualified, stockholder of record of FTE, is entitled to make its demands to inspect FTE's records under NRS 78.105(2). As noted above, Innovativ's acquisition of the FTE shares is evidenced by substantial evidence, including the verified stock ledger of FTE. There is no evidence of manifest error or actual fraud by NATCO with respect to the stock ledger of FTE. Innovativ's underlying transaction is further evidenced by the Stock Transfer Agreement. The transfer of the shares from TTP8 to Innovativ is further evidenced by a Stock Power executed by Singal on behalf of TTP8, which was also guaranteed by a

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Medallion Signature. Innovativ's transaction and stock purchase was further corroborated at trial by the testimony of Innovativ's representative, Coleman. FTE was also provided with a legal opinion regarding the registration exemption and transfer of the shares from TTP8 to Innovativ. The transfer of the shares from TTP8 to Innovativ was approved by FTE's interim CEO Beys. Innovativ's ownership of the shares was also subsequently ratified by FTE's board of directors on or about September 10, 2024. Therefore, Innovativ was a valid, qualified, stockholder of record of FTE entitled to make its demands to inspect FTE's records under NRS 78.105(2).

9.     Alternatively, the Court concludes that Innovativ has also met is burden to establish itself as a protected purchaser of FTE stock. Stock, even if "issued with a defect going to its validity, is valid in the hands of a purchaser for value and without notice of the particular defect unless the defect involves a violation of a constitutional provision." NRS 104.8202(2)(a). "Protected Purchaser" is defined as a purchaser of stock who: "(a) Gives value; (b) does not have notice of any adverse claim to the security; and (c) Obtains control of the certificated or uncertificated security." NRS 104.8303(1). "In addition to acquiring the rights of a purchaser, a protected purchaser also acquires its interest in the security free of any adverse claim." NRS 104.8303(2) (emphasis added).

10.     As set forth above, the evidence at trial established that Innovativ gave value for its shares at ($50,000.00), Innovativ did not have notice of any adverse claims to these shares in May 2020, and Innovativ obtained control of the shares. There was no evidence presented at trial of any defect related to

Exhibit 1
Page 42 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

TTP8's stock; but, even such a defect existed, Innovativ was a protected purchaser, and thus, a valid holder of 500,000 shares of FTE stock pursuant to NRS 104.8202(2)(a).

11.     Second, the Court concludes that FTE's purported cancellation of the stock in March 2023 was invalid and did not change Innovativ's status as a valid holder of FTE stock.   Nothing in NRS 78.211(1) permits a Board of Directors to unilaterally cancel stock.[11] When interpreting statutes, this Court is precluded from "expanding upon or modifying the statutory language because such acts are the Legislature's function." *Williams v. United Parcel Servs.*, 129 Nev. 386, 391-92, 302 P.3d 1144, 1147 (Nev. 2013).  Simply put, nothing in NRS 78.211 permits a Board to resort to "self-help" and unilaterally cancel stock - nor could it - because stock is a personal property right belonging to the shareholder and not the corporation upon its issuance. NRS 78.240.  Statutes within the same legislative scheme "must be interpreting harmoniously with one another in accordance with the general purpose of those statutes, and should not be read to produce unreasonable or absurd results." *Bergna v. State*, 120 Nev. 869, 873, 102 P.3d 549, 551 (2004).  Defendants' interpretation of NRS 78.211 contradicts NRS 78.240 because there is no method under the law in which personal property can simply be unilaterally taken without party consent or court order.

---

[11] NRS 78.211(1) provides:

> The board of directors may authorize shares to be issued for consideration consisting of any tangible or intangible property or benefit of the corporation, including but not limited to, promissory notes, service performed, contracts for services to be performed or other securities of the corporation . . . The judgment of the board of directors as to the consideration received for the shares issued is conclusive in the absence of actual fraud in the transaction.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 43 of 93

12. FTE's interpretation of NRS 78.211 has already been rejected by Courts; and instead, have found that a Board of Directors cannot, under NRS 78.211, unilaterally cancel stock absent a court order. *See NexMed, Inc v. Clealon Mann*, 124 P.3d 252 (Utah 2005) (interpreting NRS 78.211). While Nevada Courts have not yet interpreted NRS 78.211 for this issue, the Utah Court of Appeals, applying Nevada law, has. In *NexMed*, the Board of Directors voted to cancel 125,000 shares of stock for what it contended was insufficient consideration pursuant to NRS 78.211(1). 124 P.3d at 255. The Utah Court of Appeals affirmed the trial court's holding that NRS 78.211(1) does not permit a Board of Directors to resort to a "self-help remedy" because it does not provide "a specific remedy" for a Board of Directors. *Id.* Specifically, the Court noted that "while [NRS 78.211(2)] imposes a duty upon officers and directors to make a determination of consideration in the issuance of shares, [NRS 78.211] does not authorize that same corporation to cancel shares it has issued, based on its own dereliction of duty in failing to determine adequate consideration at the time of issuance." *Id.* at n.8. The Court finds this case persuasive here.

13. Regardless, NRS 78.211(3) does not apply because there is no evidence FTE ever placed Innovativ's shares into escrow. The sole restriction placed upon this stock was Rule 144, and FTE permitted this stock to be transferred upon satisfaction of that restriction. Rule 144 does not permit a corporation to cancel stock; instead, it is a "holding" rule that requires that certain unregistered sales of stock be owned by the same shareholder for a certain period of time before they may be transferred to a third party. *See* 17 C.F.R. §

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

44

Exhibit 1
Page 44 of 93

230.144. Courts have similarly rejected FTE's position under NRS 78.211's sister statutes. Florida, which has a virtually identical statute to Nevada, has similarly rejected Defendants' argument. *Jacob v. Bernatek*, 764 So.2d 874 (Fla. Dist. Ct. App. 2000). In *Jacob*, the embattled Board made the same arguments as FTE (i.e., that they can unilaterally cancel for fraud), and when the Court rejected that argument, the embattled Board then looked to Florida's identical provision to NRS 78.211(3) to argue that the shares could be cancelled. 764 So.2d at 877. The Court rejected that argument because "the shares were not placed in escrow or restricted in any way." *Id*. The Court finds this case persuasive, and applicable here, because FTE never placed Innovativ's shares in escrow nor restricted them in any manner that would permit FTE to unilaterally cancel them.

14. Third, the Court concludes that FTE violated NRS 78.105 by failing to comply with Innovativ's requests to inspect the FTE stockholder list. As set forth above, Innovative made multiple, valid demands to inspect the FTE stockholder list on FTE under NRS 78.105, yet FTE refused to comply with Innovativ's requests, thereby forcing Innovativ to file its Complaint (Doc. 1) and seek Writ relief from this Court to obtain the Inspection Order (Doc. 57). Thus, FTE violated NRS 78.105 by failing to comply with Innovativ's valid requests to inspect the FTE stockholder list.

15. Finally, the Court concludes that Innovativ is entitled an award of damages against FTE for its violation of NRS 78.105. Under NRS 78.105(5), when a corporation refuses to allow a shareholder to inspect the shareholder list,

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

"the corporation is liable to the [shareholder] for all damages resulting" to them. Nothing in NRS 78.105 precludes the recovery of fees as special damages. Indeed, because NRS 78.105 requires the shareholder seek equitable relief in court, attorney fees are clearly foreseeable and inevitable damages.

16.     NRS 78.105 broadly provides that "all damages" are recoverable without providing limiting language.  The term "damages" throughout Nevada's jurisprudence includes attorney fees. *See Watson Rounds v. Eighth Jud. Dist. Ct.,* 131 Nev. 783, 790, 358 P.3d 228, 233 (2015) (providing that a jury may award attorney fees as consequential damages if pleaded as special damages under NRCP 9(g)); *Albios v. Horizon Communities, Inc.,* 122 Nev. 409, 427, 132 P.3d 1022, 1034 (2006) (referring to attorney fees as special damages).  Where a corporation refuses to allow a shareholder to inspect a shareholder list, the shareholder's sole remedy is to file a Petition for Mandamus with this Court. *See* NRS 78.105; *see also State v. Garaventa Land & Livestock Co.,* 61 Nev. 110, 118 P.2d 703, 705 (1941) (holding that mandamus is the proper remedy for a shareholder who wishes to inspect corporate records).

17.     Attorney fees, as special damages, may be awarded as either (1) "fees as a cost of litigation" or (2) "fees as an element of damage[s]." *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 117 Nev. 948, 955, 35 P.3d 964, 968-69 (2001), receded from on other grounds by *Horgan v. Felton*, 123 Nev. 577, 170 P.3d 982 (2007), and *Liu v. Christopher Homes, LLC*, 130 Nev. 147, 321 P.3d 875 (2014); *see also Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC,* 141 Cal. Rptr. 3d 109, 138 (Ct. App. 2012) (explaining

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

46

Exhibit 1
Page 46 of 93

attorney fees may be awarded as damages or as fees, with the latter concerning an attorney's mode of compensation and the former concerning "damages wrongfully caused by [the] defendant's improper actions." (alteration in the original) (internal quotation marks omitted)).

18.    In order to evaluate a request for attorney fees as special damages, the Court looks at S*andy Valley* and its progeny.  In *Sandy Valley*, the Nevada Supreme Court did not adopt an express test for determining when attorney fees are considered an element of damages; but, instead, expressed that such fees are recoverable when the fees are "the natural and proximate consequence of the [defendant's] injurious conduct." 117 Nev. at 957, 35 P.3d at 969.  The Nevada Supreme Court also provided the following three examples of when attorney fees may be considered a recoverable element of damages: (1) "when a party claims it has incurred attorney fees as foreseeable damages arising from tortious conduct or a breach of contract," *id.* at 956, 35 P.3d at 969; (2) when a party incurs fees "in recovering real or personal property acquired through the wrongful conduct of the defendant or in clarifying or removing a cloud upon the title to property," *id.* at 957, 35 P.3d at 970; or (3) in "actions for declaratory or injunctive relief ... when the actions were necessitated by the opposing party's bad faith conduct," *id.* at 958, 35 P.3d at 970.

19.    Since *Sandy Valley*, the Nevada Supreme Court has narrowly construed a party's ability to recover attorney fees as special damages to instances where attorney fees were incurred because, as a result of the Defendant's intentional efforts, the Plaintiff had no other choice but to litigate.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

*See Liu*, 130 Nev. 147, 155-56, 321 P.3d 875, 880 (2014) (holding appellant could properly seek attorney fees as special damages in a third-party breach of contract action against respondent). The Nevada Supreme Court has held that "a common thread runs throughout Sandy Valley and its progeny—attorney fees are special damages only when, due to a defendant's intentional wrongful conduct, litigation is absolutely necessary to vindicate the party's rights." *Mitchell v. Nype*, Docket No. 80693, 2022 WL 4482024, *4 (Nev. Sept. 23, 2022).

20. Here, as further detailed above, for Innovativ to obtain a stockholder list from FTE, Innovativ was forced to hire counsel to prepare and file a Complaint and litigate its Petition for Mandamus. Innovativ's sole remedy was to seek judicial relief from this Court. Innovativ's attorney fees and costs are items of damage incurred in response to equitable relief that are a "natural and proximate consequence" of FTE's refusal to allow Innovativ to inspect the shareholder list. Indeed, as a proximate cause of FTE's deliberate refusal to produce the FTE stockholder list, Innovativ had to retain multiple attorneys and law firms to pursue its rights and defend itself and have incurred damages in the form of attorney fees and expenses that were unavoidable to vindicate its rights.

21. As set forth above, to obtain the complete stockholder list from FTE, Innovativ was forced pursue this litigation from December 2022, when the initial demand was made, to January 2023, when complete stockholder list was finally received by Innovativ, incurring attorney fees and costs in the amount of $332,382.43. At trial, Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, the Court concludes

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

48

Exhibit 1
Page 48 of 93

that these attorney fees and costs were the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against FTE.

22.     Therefore, the Court concludes that Innovativ prevails on its First Claim for Relief against FTE.  As such, Innovativ is entitled to an award against FTE in the amount of **$332,382.43** as damages under NRS 78.105 and Nevada law.  The Court notes, however, that damages incurred by Innovativ under this First Claim for Relief are duplicative with its Second Claim for Relief which is further discussed below.  The double recovery doctrine prevents Innovativ from recovering more than once for a single injury, even if it asserts multiple legal theories. *Elyousef v. O'Reilly & Ferrario, LLC*, 126 Nev. 441, 444, 245 P.3d 547, 549 (2010).

## 2.   <u>Validity of the First Amendment</u>

23.     Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against FTE declaring the First Amendment is ***valid***.  Under NRS Chapter 78, the power to amend the bylaws of a private corporation generally lies with the shareholders, subject to the specific voting requirements set forth in the corporation's articles of incorporation or bylaws.  As set forth above, Section 2.12(a) of FTE's Bylaws specifically permits stockholders to amend the Bylaws by a majority vote. **Ex. 3.0007**.

24.     NRS 78.320(2) permits stockholders to take corporate action via "written consent" that is "signed by stockholders holding at least a majority of the

Exhibit 1
Page 49 of 93

voting power[.]"  NRS 78.010(1)(a) similarly provides that a stockholder may cast

his or her vote "by written consent or of stockholders in person, by proxy or by

written consent."  NRS 78.350 makes clear that "every stockholder of record of a

corporation is entitled at each meeting of stockholders thereof to one vote for

each share of stock standing in his or her name on the records of the

corporation."

25.     Nevada law defines the term "stockholder of record" by statute to

mean "a person whose name appears on the stock ledger of the corporation as

the owner of record of shares of any class or series of the stock of the

corporation."  NRS  78.010(k).  NRS  78.105(1)(c)  further  provides:  "Absent

manifest error or actual fraud, the stock ledger of the corporation, as maintained

by the corporation or its designated transfer agent, shall conclusively determine

the stockholders of record of the corporation."  The Delaware Court of Chancery

explained that such a "rule of expediency" thus allows "a corporation to rely

exclusively upon its stock ledger in order to determine who are its stockholders."

*Castro v. ITT Corp.*, 598 A.2d 674, 677 (Del. Ch. 1991).

26.     The power of a stockholder to consent or approve corporate action

is not limited to only stockholders of record. Nevada law also permits voting by a

"beneficial owner" of stock. NRS 78.414(1)(a) (defining beneficial owner as a

person that "[i]ndividually or with or through any of its affiliates or associates,

possesses: . . . [v]oting power over the shares, including, without limitation, the

power to vote, or to direct the voting of, the shares[.]"); *see also State v. Leete*,

Exhibit 1
Page 50 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

16 Nev. 242, 249 (1881) (explaining that any bona fide owner of shares or their authorized proxies have the right to vote and not just stockholders of record).

27. First, the Court concludes that the First Amendment is valid. As set forth above in detail, the First Amendment was consented to by a majority of the FTE stockholders. Thus, pursuant to NRS 30.040(1) the Court declares the First Amendment is *valid*.

28. Second, the Court concludes that Innovativ is entitled to an award of special damages against FTE for this claim. As noted above, after the First Amendment became effective, FTE, through its controlling directors, Beys and DeSilva, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Frist Amendment. As set forth above in detail, FTE knew that the First Amendment was valid, yet it maintained its position throughout this case and trial: (a) that the First Amendment is invalid; (b) that the First Amendment in not binding on FTE's board; and (c) that a majority of FTE stockholders did not consent to the First Amendment.

29. Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against FTE. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of FTE's refusals to acknowledge the validity of the to the First Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given FTE's conduct. As set forth above, Innovativ's sole remedy after FTE rejected the First Amendment was to seek judicial and equitable relief

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

from this Court. And as a proximate cause of FTE's deliberate refusal to recognize the validity of the First Amendment, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

30. Specifically, the Court concludes that to obtain an order declaring the validity of the First Amendment, Innovativ was forced bring and maintain this litigation against FTE from December 2022, when it made its initial demand, through January 2025, when the trial in this matter was completed. Pursuant to the testimony of Coleman, as well as the invoices Innovativ received from its attorneys, Innovativ incurred attorney fees and costs in the amount of **$1,522,319.23** during this period. At trial, Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against FTE.

31. Therefore, the Court concludes that Innovativ prevails on its Second Claim for Relief against FTE. As such, FTE shall pay Innovativ **$1,522,319.23** as damages under Nevada law.

32. Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against

Exhibit 1
Page 52 of 93

FTE. As such, FTE shall pay Cunningham **$145,000.00** as damages under Nevada law.

### 3. <u>Validity of the Second Amendment</u>

33.　Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against FTE declaring the Second Amendment is *valid*. As already set forth above, Nevada law, as well as FTE's bylaws, specifically permit stockholders to amend the bylaws by a majority vote.

34.　First, the Court concludes that the Second Amendment is valid. As set forth above in detail, the Second Amendment was consented to by a majority of the FTE stockholders. Thus, pursuant to NRS 30.040(1) the Court declares the Second Amendment is *valid*.

35.　Second, the Court concludes that Innovativ is entitled to an award of special damages against FTE for this claim. As noted above, after the Second Amendment became effective, FTE, through its controlling directors, Beys and DeSilva, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Second Amendment. As set forth above in detail, FTE knew that the Second Amendment was valid, yet it maintained its position throughout this case and trial: (a) that the Second Amendment is invalid; (b) that the Second Amendment in not binding on FTE's board; and (c) that a majority of FTE stockholders did not consent to the Second Amendment.

36.　Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against FTE. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 53 of 93

consequence" of FTE's refusals to acknowledge the validity of the to the Second Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given FTE's conduct. As set forth above, Innovativ's sole remedy after FTE rejected the Second Amendment was to seek judicial and equitable relief from this Court. And as a proximate cause of FTE's deliberate refusal to recognize the validity of the Second Amendment, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

37.     Specifically, the Court concludes that to obtain an order declaring the validity of the Second Amendment, Innovativ was forced bring and maintain this litigation against FTE from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against FTE.

38.     Therefore, the Court concludes that Innovativ prevails on its Third Claim for Relief against FTE. As such, Innovativ is entitled to an award against FTE in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Third Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

54

Exhibit 1
Page 54 of 93

39.     Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against FTE. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claims.

### 4.     Validity of the Third Amendment

40.     Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against FTE declaring the Third Amendment is ***invalid***. As already set forth above, Nevada law, as well as FTE's bylaws, specifically permit stockholders to amend the bylaws by a majority vote.

41.     First, the Court concludes that the Third Amendment is invalid. As set forth above in detail, the Third Amendment was not consented to by a majority of the FTE stockholders. Thus, pursuant to NRS 30.040(1) the Court declares the Third Amendment is ***invalid***.

42.     Second, the Court concludes that Innovativ is entitled to an award of special damages against FTE for this claim. As noted above, after the Third Amendment became effective, FTE, through its controlling directors, Beys and DeSilva, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Third Amendment. As set forth above in detail, FTE knew that the Third Amendment was invalid, yet it maintained its position throughout this case and trial that the Third Amendment is valid.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 55 of 93

43.     Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against FTE. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of FTE's adoption of the Third Amendment.

44.     Similarly, the Court concludes that Innovativ had no other choice but to litigate given FTE's conduct. As set forth above, Innovativ's sole remedy after FTE adopted the Third Amendment was to seek judicial and equitable relief from this Court. And as a proximate cause of FTE's deliberate refusal to recognize the invalidity of the Third Amendment, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

45.     Specifically, the Court concludes that to obtain an order declaring the invalidity of the Third Amendment, Innovativ was forced bring and maintain this litigation against FTE from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against FTE.

46.     Therefore, the Court concludes that Innovativ prevails on its Fourth Claim for Relief against FTE. As such, Innovativ is entitled to an award against

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

56

Exhibit 1
Page 56 of 93

FTE in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Fourth Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549. Thus, Innovativ is made whole under this Fourth Claim for Relief by its award against FTE for its Second Claim for Relief in the amount of **$1,522,319.23.**

47. Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against FTE. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claim.

### 5. Validity of Stock under the Settlement Agreement

48. Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against FTE declaring the issuance made under the Settlement Agreement are *invalid*. The Court concludes that FTE's issuances made under the Settlement Agreement are invalid because the issuances were made without controlling stockholder approval, and without board approval.

49. An issuance of stock refers to the process by which a corporation creates or distributes new shares to investors. NRS 78.215; NRS 104.8201(1)(a) (defining stock "issuer" of a security as the company that creates the security.); 15 USC § 78c(a)(8) (similarly defining stock issuer). Pursuant to NRS 78.240, the

Exhibit 1
Page 57 of 93

**JOANNA S. KISHNER**
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

shares of stock that have been issued to a person are "personal property[.]" Because shares of stock are personal property, transferring or cancelling an already issued stock must be done with the stockholder's consent. *Id.*

50.　As already explained above, nothing in NRS 78.211(1) permits a board of directors to unilaterally cancel stock. Nor does the statute provide directors a "self-help remedy" to unilaterally cancel shares of stock held by a stockholder. *See e.g., NexMed*, 124 P.3d 252 (interpreting NRS 78.211).

51.　Under NRS Chapter 78, the power to issue stock is primarily vested in the board of directors of a corporation. According to NRS 78.200 and NRS 78.215, the board of directors of a corporation has the authority to issue stock, grant rights or options to purchase stock, and determine the terms and conditions of such issuances, unless otherwise provided in the articles of incorporation or bylaws. *See e.g., Cortina v. De Sollano*, 75 Nev. 151 (1959) (explaining that the issuance of stock is governed by the corporation's articles of incorporation and requires proper authorization from the board of directors and, in some cases, the shareholders). NRS 104.8201(1)(a)

52.　Sections 3.1(a) and 3.1(b) of the First Amendment require majority stockholder approval for stock issuances. **Ex. 31**. Section 6.1 of the Original Bylaws require board approval for stock issuances and Section 3.13 of the Original Bylaws require board approval to be done either at a meeting or via written board resolution. **Ex. 3.0014**; **Ex. 3.0010**.

53.　First, the Court concludes that FTE's issuance of 11,031,688 shares via the Settlement Agreement was ***invalid***. As set forth above, this stock

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 58 of 93

came directly from FTE (the issuer of FTE shares), and would thus, qualify as an issuance. FTE's purported issuance under the Settlement Agreement required FTE to unilaterally cancel the Szkaradeks' stock, and then re-issue the Szkaradeks' stock to other parties, but the Szkaradeks did not consent to any such cancellation, transfer, reissuance, or disposition of their stock. Even recipients of this stock conceded this fact at trial. Moreover, the stockholders holding a majority of the voting power of the issued and outstanding shares of the FTE's capital stock did not approve FTE's issuances under the Settlement Agreement; nor did the FTE's board approve of FTE's issuances under the Settlement Agreement. Accordingly, such issuances were violative of the FTE bylaws, as well as Nevada law governing issuances.

54.     Second, the Court also concludes that the Settlement Agreement could not have been validly entered into by FC-RET (who to be the initial recipient of the stock), because when it was to become effective on November 9, 2022, FC-RET had forfeited its corporate charter in Maryland. Md. Code Ann., Corps. & Ass'ns § 3-503 (West) (providing that "the charters of ... corporations [that have failed to file an annual tax report] are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void." Indeed, Maryland Courts have made clear that "[w]hen a corporation's charter is forfeited for non-payment of taxes or failure to file an annual report, the corporation is dissolved by operation of law and ceases to exist as a legal entity." *Kroop*, 118 Md.App. at 656.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

59

Exhibit 1
Page 59 of 93

55. Third, the Court concludes that Innovativ is entitled to an award of special damages against FTE for this claim. As explained above, FTE negotiated, and actively participated, in the aforementioned Settlement Agreement, the object of which was to allow FTE to (a) disenfranchise the Szkaradeks and FTE majority shareholders, and (b) give "FTE the right, in its sole discretion, to accept or reject any vote" of Szkaradeks' shares. **Ex. 125.0004**. FTE's invalid issuances advanced Beys and DeSilva's scheme to control stockholder votes, and because of this, Innovativ was forced obtain an injunction stopping FTE from taking any action under the Third Amendment, as well as maintain its claims to determine the validity of the issuances, and the subsequent Third Amendment through trial. To be sure, Innovativ's sole remedy after FTE invalidly issued stock was to seek judicial and equitable relief from this Court. As a proximate cause of FTE's issuance, Innovativ was required to retain multiple attorneys and law firms to pursue its rights and defend itself and have incurred damages in the form of attorney fees and expenses that were unavoidable to vindicate its rights. **Ex. 29.**

56. Specifically, to obtain an order declaring the issuance invalid, Innovativ was forced maintain this litigation against FTE from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 60 of 93

FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against FTE.

57.    Therefore, the Court concludes that Innovativ prevails on its Fifth Claim for Relief against FTE. As such, Innovativ is entitled to an award against FTE in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Fourth Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549.

58.    Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and due to FTE's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against FTE. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claims.

### 6.    Validity of Innovativ Stock Cancellation

59.    Pursuant to NRS 30.040(1), Innovativ seeks a declaratory judgment against FTE declaring that the purported cancellation of its stock was ***invalid***.

60.    First, as already explained above, nothing in NRS 78.211(1) permits a board of directors to unilaterally cancel stock. Nor does the statute provide directors a "self-help remedy" to unilaterally cancel shares of stock held by a stockholder. *See e.g., NexMed*, 124 P.3d 252 (interpreting NRS 78.211).

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

61

Exhibit 1
Page 61 of 93

Thus, as the Court has already concluded above, FTE's purported cancellation of the stock in March 2023 was invalid.

61.     Second, the Court concludes that Innovativ is entitled to an award of special damages against FTE for this claim. As noted above, FTE knew that Innovativ was a stockholder of record at the time its requests were made. Notwithstanding the foregoing, FTE attempted to cancel Innovativ's stock, compelling it to have to obtain injunctive relief from this Court, and maintain its claims through trial. Innovativ's sole remedy was to seek judicial and equitable relief from this Court. As a proximate cause of FTE's conduct, Innovativ had to retain multiple attorneys and law firms to pursue its rights and defend itself and has incurred damages in the form of attorney fees and expenses that were unavoidable to vindicate its rights.

62.     Specifically, the Court concludes that to obtain an order declaring the invalidity of the cancellation, Innovativ was forced bring and maintain this litigation against FTE from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of FTE's injurious conduct, were necessitated by FTE's bad faith conduct, and thus, litigation was necessary to vindicate Innovativ's rights against FTE.

63.     Therefore, the Court concludes that Innovativ prevails on its Sixth Claim for Relief against FTE. As such, Innovativ is entitled to an award against

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 62 of 93

FTE in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Sixth Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549. Thus, Innovativ is made whole under this Sixth Claim for Relief by its award against FTE for its Second Claim for Relief in the amount of **$1,522,319.23**

### 7. <u>Injunctive Relief</u>

64. Plaintiffs brought claims for injunctive relief against FTE. Nevada law permits a plaintiff to seek equitable remedies to accompany other causes of action. *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Family Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 457 (Nev. App. 2022).

65. Here, the Court concludes Plaintiffs prevail on their injunctive relief claim against FTE, because, as further detailed herein, they obtained multiple injunctions against FTE in this case.

### 8. <u>Appointment of Receiver</u>

66. Plaintiffs also brought a claim for injunctive relief against FTE. The appointment of a receiver pendente lite is a harsh and extreme remedy which should be used sparingly and only when the securing of ultimate justice requires it. *Hines v. Plante*, 99 Nev. 259, 261, 661 P.2d 880, 881–82 (1983).

67. Here, the Court concludes that FTE prevails on this claim. The Court previously denied Innovativ's request to appoint a receiver, without prejudice, because appointing a receiver at that time was not an appropriate

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

63

Exhibit 1
Page 63 of 93

remedy given the claims and issues in this case. *See* Order Denying Plaintiff Innovativ Media Group, Inc.'s Petition for Appointment of Receiver (Doc. 282).

68.     Further, given the given the injunctive relief and damages already obtained by Plaintiffs in this case, the Court concludes that ultimate justice does not require appointment of a receiver over FTE at this time.

## B.     PLAINTIFFS' CLAIMS FOR RELIEF AGAINST DESILVA

69.     Innovativ has brought the following claims for relief against DeSilva: (1) declaratory relief regarding the validity of the First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3) declaratory relief regarding the validity of the Third Amendment; and (4) injunctive relief. *See* Supplemental Complaint (Doc. 280) at 23-28.

70.     Cunningham intervened and brought the following claims for relief against DeSilva: (1) declaratory relief regarding the validity of the First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3) declaratory relief regarding the validity of the Third Amendment; and (4) injunctive relief. *See* Complaint-in-Intervention (Doc. 298) at 17-21.

71.     As a threshold matter, the Court concludes that DeSilva's answer and affirmative defenses to all claims were stricken pursuant to this Court's December 12, 2024, sanctions order. Doc. 396. Thus, DeSilva has no legal defenses to any of Innovativ's claims. Despite the foregoing, the Court considers whether Plaintiffs have met their burden on each of their claims against DeSilva.

72.     The Court further finds that as a result of DeSilva failing to file an Answer to any of the claims asserted by Cunningham, that all defenses of DeSilva are waived.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

64

Exhibit 1
Page 64 of 93

### 1.   <u>Validity of the First Amendment</u>

73.   Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against DeSilva declaring the First Amendment is *valid*. First, as already set forth above, the Court concludes that the First Amendment is valid. Thus, pursuant to NRS 30.040(1) the Court declares the First Amendment is *valid*.

74.   Second, the Court concludes that Innovativ is entitled to an award of special damages against DeSilva for this claim. As noted above, after the First Amendment became effective, DeSilva, a major stockholder and director of FTE, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Frist Amendment. As set forth above in detail, DeSilva knew that the First Amendment was valid, yet he maintained the position throughout this case and trial: (a) that the First Amendment is invalid; (b) that the First Amendment in not binding on FTE's board; and (c) that a majority of FTE stockholders did not consent to the First Amendment.

75.   Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against DeSilva. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of DeSilva's refusals to acknowledge the validity of the to the First Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given DeSilva's conduct. As set forth above, Innovativ's sole remedy after DeSilva rejected the First Amendment was to seek judicial and equitable relief from this Court. And as a proximate cause of DeSilva's deliberate refusal to recognize the validity of the First Amendment,

**JOANNA S. KISHNER**
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 65 of 93

Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

76. Specifically, the Court concludes that to obtain an order declaring the validity of the First Amendment, Innovativ was forced bring and maintain this litigation against DeSilva from December 2022, when it made its initial demand, through January 2025, when the trial in this matter was completed. Pursuant to the testimony of Coleman, as well as the invoices Innovativ received from its attorneys, Innovativ incurred attorney fees and costs in the amount of **$1,522,319.23** during this period. At trial, Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of DeSilva's injurious conduct, were necessitated by DeSilva's bad faith conduct, and due to DeSilva's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against DeSilva.

77. Therefore, the Court concludes that Innovativ prevails on its Second Claim for Relief against DeSilva. As such, DeSilva shall pay Innovativ **$1,522,319.23** as damages under Nevada law jointly and severally with FTE . There is not to be any double recovery from the Defendants.

Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of DeSilva's injurious conduct, were necessitated by DeSilva's bad faith conduct, and due to DeSilva's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against DeSilva. As such,

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

66

Exhibit 1
Page 66 of 93

DeSilva shall pay Cunningham **$145,000.00** in damages law jointly and severally with FTE . There is not to be any double recovery from the Defendants.

### 2. Validity of the Second Amendment

78. Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against DeSilva declaring the Second Amendment is *valid*. First, as already set forth above, the Second Amendment is valid. Thus, pursuant to NRS 30.040(1) the Court declares the Second Amendment is *valid*.

79. Second, the Court concludes that Innovativ is entitled to an award of special damages against DeSilva for this claim. As noted above, after the Second Amendment became effective, DeSilva, a major stockholder and director of FTE, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Second Amendment. As set forth above in detail, DeSilva knew that the Second Amendment was valid, yet he maintained the position throughout this case and trial: (a) that the Second Amendment is invalid; (b) that the Second Amendment in not binding on FTE's board; and (c) that a majority of FTE stockholders did not consent to the Second Amendment.

80. Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against DeSilva. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of DeSilva's refusals to acknowledge the validity of the to the Second Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given DeSilva's conduct. As set forth above, Innovativ's sole remedy after DeSilva rejected the Second Amendment was to

Exhibit 1
Page 67 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

seek judicial and equitable relief from this Court. And as a proximate cause of DeSilva's deliberate refusal to recognize the validity of the Second Amendment, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

81. Specifically, the Court concludes that to obtain an order declaring the validity of the Second Amendment, Innovativ was forced bring and maintain this litigation against DeSilva from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of DeSilva's injurious conduct, were necessitated by DeSilva's bad faith conduct, and due to DeSilva's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against DeSilva.

82. Therefore, the Court concludes that Innovativ prevails on its Third Claim for Relief against DeSilva. As such, Innovativ is entitled to an award against DeSilva in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Third Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549. Thus, Innovativ is made whole under this Third Claim for Relief by its award against DeSilva for its Second Claim for Relief in the amount of **$1,522,319.23.**

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

68

Exhibit 1
Page 68 of 93

83.     Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of DeSilva's injurious conduct, were necessitated by DeSilva's bad faith conduct, and due to DeSilva's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against DeSilva. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claims**.**

### 3.     Validity of the Third Amendment

84.     Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against DeSilva declaring the Third Amendment is *invalid*. First, as already set forth above, the Court concludes that the Third Amendment is invalid. Thus, pursuant to NRS 30.040(1) the Court declares the Third Amendment is *invalid*.

85.     Second, the Court concludes that Innovativ is entitled to an award of special damages against DeSilva for this claim. As noted above, DeSilva, a major stockholder and director of FTE, personally implemented the Third Amendment, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Third Amendment. As set forth above in detail, DeSilva knew that the Third Amendment was invalid, yet he maintained the position throughout this case and trial that it was valid, and notably, reversed both the First and Second Amendments.

86.     Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against DeSilva. Innovativ's attorney fees and costs are items of damage

Exhibit 1
Page 69 of 93

incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of DeSilva's implementing the invalid Third Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given DeSilva's conduct. As set forth above, Innovativ's sole remedy after DeSilva implemented the Third Amendment was to seek judicial and equitable relief from this Court. And as a proximate cause of DeSilva's deliberate conduct, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

87.      Specifically, the Court concludes that to obtain an order declaring the invalidity of the Third Amendment, Innovativ was forced bring and maintain this litigation against DeSilva from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of DeSilva's injurious conduct, were necessitated by DeSilva's bad faith conduct, and due to DeSilva's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against DeSilva.

88.      Therefore, the Court concludes that Innovativ prevails on its Fourth Claim for Relief against DeSilva. As such, Innovativ is entitled to an award against DeSilva in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Fourth Claim for Relief are duplicative with its Second Claim

Exhibit 1
Page 70 of 93

for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549. Thus, Innovativ is made whole under this Fourth Claim for Relief by its award against DeSilva for its Second Claim for Relief in the amount of **$1,522,319.23**.

89.     Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of DeSilva's injurious conduct, were necessitated by DeSilva's bad faith conduct, and due to DeSilva's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against DeSilva. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claims.

### 4.     <u>Injunctive Relief</u>

90.     Plaintiffs brought claims for injunctive relief against DeSilva. Nevada law permits a plaintiff to seek equitable remedies to accompany other causes of action. *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Family Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 457 (Nev. App. 2022). Here, the Court concludes Plaintiffs prevail on their injunctive relief claims against DeSilva, because, as further detailed herein, Plaintiffs obtained multiple injunctions against DeSilva in this case.

### C.     **PLAINTIFFS' CLAIMS FOR RELIEF AGAINST LATERAL**

91.     Innovativ has brought the following claims for relief against Lateral: (1) declaratory relief regarding the validity of the First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3)

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

71

Exhibit 1
Page 71 of 93

declaratory relief regarding the validity of the Third Amendment; and (4) injunctive relief. *See* Supplemental Complaint (Doc. 280) at 23-28.

92.    Cunningham intervened and brought the following claims for relief against Lateral: (1) declaratory relief regarding the validity of the First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3) declaratory relief regarding the validity of the Third Amendment; and (4) injunctive relief. *See* Complaint-in-Intervention (Doc. 298) at 17-21.

93.    The Court further finds that as a result of Lateral failing to file an Answer to any of the claims asserted by Cunningham, that all defenses of Lateral are waived.

## 1.    Validity of the First Amendment

94.    Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Lateral declaring the First Amendment is ***valid***. Lateral asserts that Plaintiffs lack standing to bring their declaratory relief claims against Lateral regarding the validity of the various amendments to FTE's bylaws.

95.    In Nevada, a plaintiff may bring an action for declaratory relief to determine "any question of construction or validity arising under [any] instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." NRS 30.040(1). NRS 78.060(2)(e) provides that a corporation's bylaws manage, regulate, and govern the corporation's business affairs and property. NRS 78.060(2)(e). Even the rights of directors, officers, and stockholders as they relate to the corporation. *Id.*

96.    While the Nevada Supreme Court has not yet addressed the authority of corporate bylaws as a legal instrument, the Court may look to

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 72 of 93

Delaware law as persuasive. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F.Supp. 1342, 1347 (D. Nev. 1997). This is especially true since both Nevada and Delaware corporate law authorize the adoption of bylaws to govern "the conduct" as well as the relative "rights or powers of its stockholders, directors, officers or employees." 8 Del. C. §§ 109(b), 102(6); c.f. NRS 78.060(2)(e).

97.    In Delaware, courts have long held that the bylaws as a legal instrument have the full force and effect "of a binding broader contract among the directors, officers and stockholders" of the corporation. *Hill Int'l, Inc. v. Opportunity Partners L.P.*, 119 A.3d 30, 38 (Del. 2015) (citing *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch.2013); *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del.2010); *Lawson v. Household Fin. Corp.*, 152 A. 723, 726 (Del.1930). Since bylaws and corporate charters operate as contracts between corporate directors, officers, and stockholders, the rules of contract apply. *Id.*

98.    First, the Court concludes that Plaintiffs have legal standing to determine the validity of the First Amendment as FTE stockholders. Cunningham also has legal standing as an FTE director. And as such, Plaintiffs have legal standing to seek a declaratory judgement on the validity of various amendments to FTE bylaws.

99.    Second, as already set forth above, the Court concludes that the First Amendment is valid. Thus, pursuant to NRS 30.040(1) the Court declares the First Amendment is ***valid***.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

73

Exhibit 1
Page 73 of 93

100.    Third, the Court concludes that Innovativ is entitled to an award of special damages against Lateral for this claim. As noted above, after the First Amendment became effective, Lateral, a major stockholder controlled by DeSilva, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Frist Amendment. As set forth above in detail, Lateral knew that the First Amendment was valid, yet it maintained the position throughout this case and trial: (a) that the First Amendment is invalid; (b) that the First Amendment in not binding on FTE's board; and (c) that a majority of FTE stockholders did not consent to the First Amendment. Notably, at no point in this case did Lateral change its untenable position.

101.    Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against Lateral. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of Lateral's refusals to acknowledge the validity of the First Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given Lateral's conduct. As set forth above, Innovativ's sole remedy after Lateral rejected the First Amendment was to seek judicial and equitable relief from this Court. And as a proximate cause of Lateral deliberate refusal to recognize the validity of the First Amendment, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

102.    Specifically, the Court concludes that to obtain an order declaring the validity of the First Amendment, Innovativ was forced bring and maintain this

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 74 of 93

litigation against Lateral from December 2022, when it made its initial demand, through January 2025, when the trial in this matter was completed. Pursuant to the testimony of Coleman, as well as the invoices Innovativ received from its attorneys, Innovativ incurred attorney fees and costs in the amount of **$1,522,319.23** during this period. At trial, Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of Lateral's injurious conduct, were necessitated by Lateral's bad faith conduct, and due to Lateral's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against Lateral.

103. Therefore, the Court concludes that Innovativ prevails on its Second Claim for Relief against Lateral. As such, Lateral shall pay Innovativ **$1,522,319.23** as damages under Nevada law.

104. Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of Lateral's injurious conduct, were necessitated by Lateral's bad faith conduct, and due to Lateral's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against Lateral. As such, Lateral shall pay Cunningham **$145,000.00** in damages.

### 2. Validity of the Second Amendment

105. Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Lateral declaring the Second Amendment is ***valid***. First, as already set

forth above, the Second Amendment is valid. Thus, pursuant to NRS 30.040(1) the Court declares the Second Amendment is *valid*.

106. Second, the Court concludes that Innovativ is entitled to an award of special damages against Lateral for this claim. As noted above, after the Second Amendment became effective, Lateral, a major stockholder of FTE, rejected its validity, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Second Amendment. As set forth above in detail, Lateral knew that the Second Amendment was valid, yet he maintained the position throughout this case and trial: (a) that the Second Amendment is invalid; (b) that the Second Amendment in not binding on FTE's board; and (c) that a majority of FTE stockholders did not consent to the Second Amendment.

107. Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against Lateral. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of Lateral's refusals to acknowledge the validity of the to the Second Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given Lateral's conduct. As set forth above, Innovativ's sole remedy after Lateral rejected the Second Amendment was to seek judicial and equitable relief from this Court. And as a proximate cause of Lateral's deliberate refusal to recognize the validity of the Second Amendment, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

76

Exhibit 1
Page 76 of 93

108.    Specifically, the Court concludes that to obtain an order declaring the validity of the Second Amendment, Innovativ was forced bring and maintain this litigation against Lateral from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of Lateral's injurious conduct, were necessitated by Lateral's bad faith conduct, and due to Lateral's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against Lateral.

109.    Therefore, the Court concludes that Innovativ prevails on its Third Claim for Relief against Lateral. As such, Innovativ is entitled to an award against Lateral in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Third Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549. Thus, Innovativ is made whole under this Third Claim for Relief by its award against Lateral for its Second Claim for Relief in the amount of **$1,522,319.23.**

110.    Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the natural and proximate consequence of Lateral's injurious conduct, were necessitated by Lateral's bad faith conduct, and due to Lateral's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 77 of 93

against Lateral. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claims**.**

### 3.    Validity of the Third Amendment

111.    Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Lateral declaring the Third Amendment is ***invalid***. First, as already set forth above, the Court concludes that the Third Amendment is invalid. Thus, pursuant to NRS 30.040(1) the Court declares the Third Amendment is ***invalid***.

112.    Second, the Court concludes that Innovativ is entitled to an award of special damages against Lateral for this claim. As noted above, Lateral, a major stockholder and director of FTE, personally implemented the Third Amendment, forcing Innovativ to file its complaint seeking a declaration as to the validity of the Third Amendment. As set forth above in detail, Lateral knew that the Third Amendment was invalid, yet he maintained the position throughout this case and trial that it was valid, and notably, reversed both the First and Second Amendments.

113.    Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial against Lateral. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of Lateral's implementing the invalid Third Amendment. Similarly, the Court concludes that Innovativ had no other choice but to litigate given Lateral's conduct. As set forth above, Innovativ's sole remedy after Lateral implemented the Third Amendment was to seek judicial and equitable relief from

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

78

Exhibit 1
Page 78 of 93

this Court. And as a proximate cause of Lateral's deliberate conduct, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

114.    Specifically, the Court concludes that to obtain an order declaring the invalidity of the Third Amendment, Innovativ was forced bring and maintain this litigation against Lateral from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of Lateral's injurious conduct, were necessitated by Lateral's bad faith conduct, and due to Lateral's wrongful conduct, litigation was absolutely necessary to vindicate Innovativ's rights against Lateral.

115.    Therefore, the Court concludes that Innovativ prevails on its Fourth Claim for Relief against Lateral. As such, Innovativ is entitled to an award against Lateral in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Fourth Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549. Thus, Innovativ is made whole under this Fourth Claim for Relief by its award against Lateral for its Second Claim for Relief in the amount of **$1,522,319.23.**

116.    Similarly, Cunningham incurred **$145,000.00** in attorney fees through the conclusion of trial. Cunningham's attorney fees and costs are the

Exhibit 1
Page 79 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

natural and proximate consequence of Lateral's injurious conduct, were necessitated by Lateral's bad faith conduct, and due to Lateral's wrongful conduct, litigation was absolutely necessary to vindicate Cunningham's rights against Lateral. As such, Cunningham is entitled to an award of **$145,000.00** for this claim. The Court concludes, however, that the damages incurred by Cunningham under this claim are duplicative with his prior claims**.**

### 4. <u>Injunctive Relief</u>

117. Plaintiffs brought a claim for injunctive relief against Lateral. Nevada law permits a plaintiff to seek equitable remedies to accompany other causes of action. *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Family Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 457 (Nev. App. 2022). Here, the Court concludes Plaintiffs prevail on their injunctive relief claim against Lateral, because, as further detailed herein, Plaintiffs obtained multiple injunctions against Lateral in this case.

### D. PLAINTIFFS' CLAIMS FOR RELIEF AGAINST APAVA AND LEIDER

118. Innovativ has brought the following claims for relief against Apava and Leider: (1) declaratory relief regarding the validity of the First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3) declaratory relief regarding the validity of the Third Amendment; (4) validity of the issuances under the Settlement Agreement; and (4) injunctive relief. *See* Supplemental Complaint (Doc. 280) at 23-28.

119. Cunningham intervened and brought the following claims for relief against Apava and Leider for: (1) declaratory relief regarding the validity of the

Exhibit 1
Page 80 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

First Amendment; (2) declaratory relief regarding the validity of the Second Amendment; (3) declaratory relief regarding the validity of the Third Amendment; (4) validity of the stock issuances under the Settlement Agreement; and (4) injunctive relief. *See* Complaint-in-Intervention (Doc. 298) at 17-21.

120. Cunningham is not seeking damages as to Apava and Leider.

### 1. Validity of the First Amendment

121. Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Apava and Leider declaring the First Amendment is ***valid***. Apava and Leider assert that Innovativ lacks standing to bring its declaratory relief claims against them regarding the validity of the various amendments to FTE's bylaws.

122. First, as already explained above, the Court concludes that Plaintiffs have legal standing to determine the validity of the First Amendment as FTE stockholders. Cunningham also has legal standing as an FTE director. And as such, Plaintiffs have legal standing to seek a declaratory judgement on the validity of various amendments to FTE bylaws.

123. Second, as already set forth above, the Court concludes that the First Amendment is valid. Thus, pursuant to NRS 30.040(1) the Court declares the First Amendment is ***valid***.

124. Third, as this Court concluded in its separate Order Granting in Part and Denying in Part the Apava Defendants' Rule 52 Motion, the Court concludes that Innovativ is not entitled to an award of special damages against Apava and Leider for this claim for the reasons set forth therein.

125. Specifically, the Court concluded that, given the undisputed chronology and plain language of the pleadings, the Court found that Innovativ

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 81 of 93

did not meet its burden to establish how the Apava Defendants could be held liable for special damages arising out of the First Amendment.

126.    Moreover, the Court determined that, regardless of the issue of liability, all defendants including the Apava Defendants were bound by the Court's ultimate ruling as to the validity of the First Amendment.

127.    Therefore, the Court concludes that Innovativ does not prevail on its Second Claim for Relief against Apava and Leider.

### 2.    Validity of the Second Amendment

128.    Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Apava and Leider declaring the Second Amendment is *valid*. First, as already set forth above, the Second Amendment is valid. Thus, pursuant to NRS 30.040(1) the Court declares the Second Amendment is *valid*.

129.    Second, as this Court concluded in its separate Order Granting in Part and Denying in Part the Apava Defendants' Rule 52 Motion, the Court concludes that Innovativ is not entitled to an award of special damages against Apava and Leider for this claim for the reasons set forth therein.

130.    Specifically, the Court concluded that, given the undisputed chronology and plain language of the pleadings, the Court did not see how Innovativ met its burden to establish how the Apava Defendants could be held liable for special damages arising out of the Second Amendment.

131.    Moreover, the Court determined that, regardless of the issue of liability, Apava Defendants were bound by the Court's ultimate ruling as to the validity of the Second Amendment.

Exhibit 1
Page 82 of 93

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

132.   Therefore, the Court concludes that Innovativ does not prevail on its Third Claim for Relief against Apava and Leider.

### 3.   Validity of the Third Amendment

133.   Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Apava and Leider declaring the Third Amendment is ***invalid***. First, as already set forth above, the Court concludes that the Third Amendment is invalid. Thus, pursuant to NRS 30.040(1) the Court declares the Third Amendment is ***invalid***.

134.   Second, the Court concludes that Innovativ is entitled to an award of special damages against Apava jointly and severally with FTE, DeSilva and Lateral for this claim as set forth above.

135.   Further, as set forth above, to obtain declaratory relief from this Court, Innovativ was forced to hire counsel and litigate this case through trial.. Innovativ's attorney fees and costs are items of damage incurred in response to its declaratory relief claim that are a "natural and proximate consequence" of Apava actions as detailed above.  While  Leider had a role in  implementing the invalid Third Amendment, Plaintiff did not meet its burden regarding the other necessary prongs to merit Leider being held liable for special damages.  Pltinaiff, however, on the merits prevails on the Declaratory Relief Claim as to all Defendants including Leider as the focus of the first part of the relief is a Declaration that the Third Amendment was invalid . Similarly, the Court concludes that Innovativ had no other choice but to litigate given the   conduct. As set forth above, Innovativ's sole remedy after  the Third Amendment was implemented to seek judicial and equitable relief from this Court. As a proximate

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 83 of 93

cause of the conduct, Innovativ incurred damages in the form of attorneys' fees that were unavoidable to vindicate its rights.

136. Specifically, the Court concludes that to obtain an order declaring the invalidity of the Third Amendment, Innovativ was forced bring and maintain this litigation from March 2023 through trial. As set forth above, Innovativ incurred attorney fees and costs during this period in the amount of $506,940.95 (**Ex. 29.0149-29.0237**), and Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. Thus, these attorney fees and costs are the natural and proximate consequence of Apava and the FTE Defendants injurious conduct, were necessitated by Apava bad faith conduct.

137. Therefore, the Court concludes that Innovativ prevails on its Fourth Claim for Relief against Apava and Leider as to the Declaratory Relief request. The Court further finds that due to the evidence presented, Innovativ also prevailed as to Apava as to its request for special damages pursuant to case law. As such, Innovativ is entitled to an award against Apava in the amount of $506,940.95 jointly and severally with the FTE Defendants as damages under Nevada law for this claim. The Court concludes, however, that the damages incurred by Innovativ under this Fourth Claim for Relief are duplicative with its Second Claim for Relief. *Elyousef*, 126 Nev. at 444, 245 P.3d at 549 and it cannot obtain double recovery. Validity of the Stock under the Settlement Agreement

138. Pursuant to NRS 30.040(1), Plaintiffs seek a declaratory judgment against Apava and Leider declaring the issuance made under the Settlement Agreement are *invalid*. With respect to this claim, Apava and Leider's counsel attempted to argue at trial that they were protected purchasers of the stock they were issued under the Settlement Agreement.[12]

---

[12] The Court notes that Apava and Leider did not plead this as an affirmative defense in their Answers. Regardless, Apava and Leider do not meet the requirements of a protected purchaser on the merits.

**JOANNA S. KISHNER**
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

139.   NRS 104.8303 defines a "protected purchaser" as a person: "(a) Gives value; (b) Does not have notice of any adverse claim to the security; and (c) Obtains control of the certificated or uncertificated security."

140.   First, the Court concludes that Apava and Leider were not protected purchasers, because they had notice of the Szkaradeks' adverse claim to the stock and never obtained control of the stock. As set forth above, it is not credible that Apava and Leider were unaware of the Szkaradeks' adverse claim to the stock in light of the testimony of Forelle, who testified that both he and Leider are directors of FC-RET. Notably, FC-RET was not only aware of the Szkaradeks' adverse claim to the stock, it intervened in the Szkaradeks' case in Delaware. This intervention took place *before* the Settlement Agreement was executed. Thus, the evidence at trial showed that Apava and Leider were, indeed aware of the adverse claims, and are not protected purchasers of stock.

141.   Second, as already set forth above, the Court concludes that FTE's issuance of 11,031,688 shares via the Settlement Agreement was *invalid*. Such issuances were violative of the FTE bylaws, as well as Nevada law governing issuances.

142.   Third, as set forth above, the Court concludes that the Settlement Agreement could not have been validly entered into by FC-RET (the initial recipient of the stock), because when it was to become effective on November 9, 2022, FC-RET had forfeited its corporate charter in Maryland. *Kroop*, 118 Md.App. at 656.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 85 of 93

143.    Fourth, the Court concludes that Innovativ is entitled to an award of special damages against Apava for this claim. As explained above, Apava and Leider have maintained, without evidence, that they are valid stockholders of FTE.    Further, the evidence showed that Apava negotiated, and actively participated, in the aforementioned Settlement Agreement, the object of which was to allow FTE to (a) disenfranchise the Szkaradeks and FTE majority shareholders, and (b) give FTE the right, in its sole discretion, to accept or reject any vote of Szkaradeks' shares. Indeed, Apava's active participation helped advance Beys via FTE and DeSilva's scheme to control stockholder votes.

144.    As a result of Apava and Leider's conduct, Innovativ was forced to come back to this Court, and obtain an injunction stopping Apava and Leider from taking any action under the Third Amendment. Doc. 224; Doc 252. Further, as invalid stockholders, Apava and Leider signed the Third Amendment in March 2023, and Innovativ had no other choice but to bring its claims against Apava and Leider for declaratory relief, to determine the validity of the issuances, and the subsequent Third Amendment.

145.    Innovativ's sole remedy after Apava and Leider executed the Third Amendment was to seek judicial and equitable relief from this Court

146.    To obtain an order declaring the Third Amendment to be valid, Innovativ was forced maintain this litigation against Apava and Leider from March 2023 through trial. Pursuant to the testimony of Coleman, as well as Innovativ's itemized billing records, Innovativ incurred attorney fees and costs in the amount of **$506,940.95** between March 2023 and January 2025. **Ex. 29.0149-29.0237**. At

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 86 of 93

trial, Defendants provided no alternative calculations with respect to these fees and costs incurred by Innovativ. These attorney fees and costs are the natural and proximate consequence of Apava and the FTE Defendants ( and to a lesser extent Leider's) injurious conduct, were necessitated by Apava and the FTE Defendants; bad faith conduct. Litigation was necessary due to the wrongful conduct, and to vindicate Innovativ's rights.

147. Therefore, the Court concludes that Innovativ prevails on its Fifth Claim for Relief against Apava and Leider as to the Declaratory Relief request. Further, Innovativ prevails against Apava on its special damages request. As such, Innovativ is entitled to an award against Apava and the FTE Defendants in the amount of **$506,940.95** as damages under Nevada law for this claim. The Court concludes, however, that to the extent damages incurred by Innovativ under this Fifth Claim for Relief are duplicative with any other claim, Innovativ is not obtain double recovery.

### 4. Injunctive Relief

148. Plaintiffs brought claims for injunctive relief against Apava and Leider. Nevada law permits a plaintiff to seek equitable remedies to accompany other causes of action. *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Family Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 457 (Nev. App. 2022). Here, the Court concludes Plaintiffs prevail on their injunctive relief claims against Apava and Leider, because, as further detailed herein, Plaintiffs obtained multiple injunctions against Apava and Leider in this case.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

Exhibit 1
Page 87 of 93

## E.    JURISDICTION

149.    The Court concludes that FTE, DeSilva, and Lateral have appeared and consented to personal jurisdiction in this forum. The Court concludes that, pursuant to NRS 14.065, it has personal jurisdiction over FTE, DeSilva, and Lateral because: FTE is incorporated in in Nevada; their activities and contacts in Nevada have been and continue to be so substantial, continuous, and systematic that it is deemed present in the forum; and their obligations, acts, and omissions complained of herein were incurred and committed, in whole or in part, in Nevada, and thus, they have sufficient contacts with this forum such that the exercise of personal jurisdiction over them will not offend traditional notions of fair play and substantial justice.

150.    The Court finds that Apava and Leider have appeared and consented to personal jurisdiction in this forum. The Court concludes that, pursuant to NRS 14.065, it has personal jurisdiction over Apava and Leider because: FTE is incorporated in in Nevada; their activities and contacts in Nevada have been and continue to be so substantial, continuous, and systematic that it is deemed present in the forum; and their obligations, acts, and omissions complained of herein were incurred and committed, in whole or in part, in Nevada, and thus, they have sufficient contacts with this forum such that the exercise of personal jurisdiction over them will not offend traditional notions of fair play and substantial justice. The Court also notes that Apava and Leider's affirmative defenses regarding personal jurisdiction were stricken pursuant to the Sanctions Order.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

88

Exhibit 1
Page 88 of 93

151.    The Court concludes that venue is proper in the Eighth Judicial District Court in Clark County, Nevada, pursuant to NRS 13.040 because (1) one or more of the Defendants reside in Clark County, Nevada, and are authorized to transact business, and currently transact business, within Clark County, Nevada; and (2) the obligations, acts, and omissions complained of herein were incurred, in whole or in part, within Clark County, Nevada.

152.    The Court concludes that it possesses subject matter jurisdiction over this matter because Clark County, Nevada, is the judicial district in which a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

153.    The Court concludes that action concerns NRS Chapter 78 in that it involves a Nevada corporation and its bylaws, and thus, it is appropriate for treatment within the Eighth Judicial District Court's Business Division.

154.    If any of these conclusions of law are more properly treated as findings of fact, then they shall so be treated.

## IV.    ORDER

**NOW THEREFORE, IT IS HEREBY ORDERED**:

155.    The Court declares that the First Amendment is a ***valid*** amendment to FTE's bylaws.

156.    The Court declares that the Second Amendment is a ***valid*** amendment to FTE's bylaws.

157.    The Court declares that the Third Amendment is ***invalid****,* and that it does not restate, modify, or amend FTE's bylaws.

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

158.   The Court declares that all stock issued under the Settlement Agreement, including the stock received by Apava and Leider, is *invalid*, and further orders that all such stock issued under the Settlement Agreement be returned to FTE's treasury.

159.   The Court declares that Innovativ's stock is *valid,* and likewise, that FTE's attempt to cancel Innovativ's stock is *invalid*.

160.   Each of the bonds posted by Innovativ in the amount of **$30,000.00** shall be released back to Innovativ.

161.   Judgment is entered in Innovativ's favor, and against FTE, Lateral, and DeSilva, jointly and severally, in the amount of $1,522,319.23. However, this amount must be offset by the amounts in attorney fees and costs already granted and paid regarding FTE, Lateral, and DeSilva, as set forth in the Fees Order (Doc. 441). Post-judgment interest shall accrue at the legal rate until satisfied.

162.   Judgment is entered in Innovativ's favor, and against Apava, jointly and severally, in the amount of $506,940.95. However, this amount must be offset by the amounts in attorney fees and costs already granted regarding Apava and Leider, as set forth in the Fees Order (Doc. 441).   Further this amount is included within the above-identified total  amount  in paragraph 161 (not in addition to), and FTE, Lateral, Richard DeSilva, and  Apava,  shall be jointly and severally liable to Innovativ for $506,940.95 (less the amounts already paid per the Fees Order (Doc.441))   whereas the FTE Defendants are liable for the remaining amounts awarded herein.  Post-judgment interest shall accrue at the legal rate until satisfied.

**JOANNA S. KISHNER**
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

90

Exhibit 1
Page 90 of 93

163.    Judgment is entered in Joseph Cunningham's favor, and against FTE, Lateral, and DeSilva, jointly and severally, in the amount of **$145,000.00**. Post-judgment interest shall accrue at the legal rate until satisfied.

**IT IS SO ORDERED.**

DATED this 3rd day of July, 2025.

Dated this 3rd day of July, 2025

**FCA DB8 B197 294B**
**Joanna S. Kishner**
**District Court Judge**

## CERTIFICATE OF SERVICE

I hereby certify that on or about the date filed, a copy of this Order was served via Electronic Service to all counsel/registered parties, pursuant to the Nevada Electronic Filing Rules, and/or served via in one or more of the following manners: fax, U.S. mail, or a copy of this Order was placed in the attorney's file located at the Regional Justice Center:

**ALL REGISTERED COUNSEL/PARTIES SERVED VIA E-SERVICE**

/s/ Tracy L. Cordoba
TRACY L. CORDOBA-WHEELER
Judicial Executive Assistant

JOANNA S. KISHNER
DISTRICT JUDGE
DEPARTMENT XXXI
LAS VEGAS, NEVADA 89155

91

Exhibit 1
Page 91 of 93

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| Innovativ Media Group, Inc., Plaintiff(s) | CASE NO: A-22-849188-B |
| vs. | DEPT. NO. Department 31 |
| FTE Networks, Inc., Defendant(s) | |

**<u>AUTOMATED CERTIFICATE OF SERVICE</u>**

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Findings of Fact, Conclusions of Law and Judgment was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 7/3/2025

| | |
|---|---|
| Chad Clement | cclement@maclaw.com |
| Cally Hatfield | chatfield@maclaw.com |
| Alexander Calaway | acalaway@maclaw.com |
| Lennie Fraga | lfraga@maclaw.com |
| Daniel Cereghino | dan@lexdomuslaw.com |
| James Beckstrom | jb@beckstromlaw.com |
| Suzanne Boggs | sb@beckstromlaw.com |
| Brandi Planet | brandi@lexdomuslaw.com |
| Daniel Cereghino | dan@lexdomuslaw.com |
| Daniel Cereghino | dan@lexdomuslaw.com |

Exhibit 1
Page 92 of 93

| | |
|---|---|
| Gary Jones | grj@bbsclaw.com |
| Michelle Rogers | mjr@bbsclaw.com |
| Gary Jones | grj@bbsclaw.com |

If indicated below, a copy of the above mentioned filings were also served by mail via United States Postal Service, postage prepaid, to the parties listed below at their last known addresses on 7/7/2025

Therese Shanks              Fennemore Craig, P.C.
Attn: Therese M. Shanks, Esq
7800 Rancharrah Parkway
Reno, NV, 89511

Exhibit 1
Page 93 of 93